**Diane PRENATT (Stevens), Appellant–Respondent,**

v.

**John Knox STEVENS, Appellee– Petitioner.**

No. 53A04–9107–CV–237.

Court of Appeals of Indiana, Fourth District.

Sept. 2, 1992.

D.L. Poer, Bloomington, for appellant-respondent.

John Knox Stevens, pro se.

CONOVER, Judge.

Respondent–Appellant Diane Prenatt Stevens (Diane) appeals the Monroe Circuit Court's dissolution of marriage judgment in favor of Petitioner–Appellee (Cross–Appellant) John Knox Stevens (John).

We affirm in part and reverse in part.

Diane presents four restated issues for review:

1. whether the court abused its discretion in entering an order of joint custody;

2. whether Diane's doctorate degree constitutes marital property;

3. whether the trial court erred when it awarded John a percentage of any appreciation on the marital residence; and

4. whether the trial court erred when it awarded a dependency exemption to John.

John presents two restated issues for review on cross-appeal:

1. whether the court erred when it included property acquired after final separation for distribution; and

2. whether the court erred when it awarded John's university diplomas, military and family photographs, and family books to Diane.

John and Diane were married on June 20, 1975. The next month, they moved to Bloomington, Indiana, so Diane could earn a doctoral degree in English. During the marriage, John worked at Indianapolis University–Purdue University at Indianapolis as a history professor, while Diane continued to pursue her degree. Following the award of the degree and during the last three years of the marriage, Diane did not take full time employment commensurate with her skills and earning capacity.

Two daughters were born during the marriage, ages twelve and eight at the time of separation. During the marriage, the parties purchased a home in Bloomington, Indiana. John doubled the size of the house by constructing various additions. He contributed approximately 92% of the family's income during the course of the marriage.

Continuing disputes between the parties finally resulted in John moving from the marital residence to an apartment in Indianapolis, on September 5, 1989. John visited the children on weekends until October 13, 1989, when an argument led to his assaulting Diane.

John filed for dissolution of the marriage in December of 1989. The trial court ruled John and Diane should share joint custody of their children. The court also divided their property and provided for its disposition.

Diane maintains the trial court failed to follow the statutory guidelines for awarding joint custody. She describes the evidence as showing rancor and hostility. between the parties and points to John's explosive personality and profound animosity toward her as evidence of the parties' inability to cooperate with each other. In the absence of the parties' express agreement and based upon the record, Diane contends the award of joint legal custody is an abuse of discretion.

IND.CODE 31–1–11.5–21(f) authorizes a trial court to award legal custody jointly if it finds such an arrangement would be in the child's best interest. *Walker v. Walker* (1989), Ind.App., 539 N.E.2d 509, 510. In determining whether an award of joint custody would be in the child's best interest, IC 31–1–11.5–21(g) requires the court to "consider it a matter of primary, *but not determinative* importance, that the parties awarded joint custody have agreed to such an award." *Stutz v. Stutz* (1990), Ind. App., 556 N.E.2d 1346, 1350. Additionally, consideration must be given to:

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child and whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(4) whether the persons awarded joint custody live in close proximity to each other and plan to continue to do so; and

(5) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

*Id.* (*citing* IC 31–1–11.5–21(g)).

■ The trial court found both parents to be fit and proper persons to have legal joint custody of the minor daughters, giv-

ing Diane primary physical custody of both, subject to John's visitation rights. The trial court did not offer any additional factual findings with respect to the statutory considerations of IC 31–1–11.5–21(g). The statute requires the court to only consider relevant factors in awarding custody. *Id.* Absent a request for specific findings pursuant to Ind. Trial Rule 52(A), a custody determination based upon this section will be reversed only if it is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences to be drawn therefrom. *Id.* at 1351; *see also Walker*, 539 N.E.2d at 510.

■ Diane argues the court erred when it awarded joint custody because the facts fail to satisfy "even one of the statutory criteria supporting a joint custody award." Brief of Appellant at 15. A thorough examination of the record does not support Diane's conclusion.

A psychologist testified John was a fit parent whose home would provide a conventionally clean and quiet atmosphere. Further, the record shows Diane thought of John as a loving and kind parent. Testimony from three witnesses presented a picture of a loving father whose relationships with his children were normal, affectionate, and healthy.

The record supports the conclusion either home would be emotionally beneficial for the children. Evidence was presented that Diane and John had disagreements and arguments between themselves. However, nothing in the record suggests fundamental differences in child rearing philosophy or lifestyles.[1]

As Judge Miller stated in *Walker:*

Frankly, we are reluctant to affirm a trial court's order of joint custody when one of the parties objects thereto ... On the other hand, the statute gives the trial court the discretion to award joint custody and we are just as reluctant to reverse a trial court's exercise of that discretion when the evidence does not show a clear abuse thereof by attempting to impose an intolerable situation upon two persons whose relationship has become a battleground.

539 N.E.2d 509 at 512.

■ Diane next contends the trial court erred when it found her doctoral degree was a marital asset. She also cites as error the court setting her degree off against her claim to John's accumulated pension rights of approximately $200,000. She claims the court erroneously found her degree to be a future asset. The court stated:

13. The court believes that the Husband's accumulated pension rights through TIA–CREFF (his college retirement plan) are an asset of the marriage subject to division in part by the Court. The Court also believes that Wife's acquisition of a doctorate degree during the marriage is an asset of the marriage subject to division by the court. The issue of division is further impacted by the ages (and future earning capacity) of the parties. Wife's educational achievements and extended potential earning life (more than 25 years) balance Husband's imminent reliance on his accumulated retirement benefits (approximately 5 years hence). The court, therefore, awards to Husband the entirety of his retirement benefits and awards to Wife the entirety of the benefit she derives from her education.

(R. 184).

There are no Indiana cases which have directly discussed the issue at hand. However, three cases are helpful in our analysis. In *Wilcox v. Wilcox* (1977), 173 Ind. App. 661, 365 N.E.2d 792, both the husband and the wife completed undergraduate degrees, then the wife worked while the husband completed his graduate work. Afterward, the wife quit work to raise the couple's children while the husband worked as a college professor. Several years later, the wife filed for divorce and claimed the husband's future earnings were a marital

---

1. We find the distance between Indianapolis and Bloomington is not enough to render the trial court's judgment an abuse of discretion.

asset under IC 31–1–11.5–11. The trial court refused to treat the husband's future earnings as property of the marriage. On appeal, this court first noted "that any award over and above the actual physical assets of the marital relationship must represent some form of support or maintenance." 365 N.E.2d at 794. We then held "that a vested present interest must exist for the item to come within the ambit of 'marital assets'." *Id.* at 795. We finally concluded that in determining what is to be divided there is nothing in the statute which lends itself to the interpretation that future income is divisible "property". *Id.*

In *In re Marriage of McManama* (1979), 179 Ind.App. 513, 386 N.E.2d 953, *reh. denied,* a panel of this court was asked to decide whether the trial court erred in awarding the wife $3600 (the amount the wife paid to help the husband acquire his advanced degree) as part of the property settlement. The husband cited *Wilcox* as authority that the trial court was erroneously making an award in excess of the value of the marital assets. The majority noted the husband's degree was not property to be included in the marital pot. However, the majority held although the degree could not be valued as property to be distributed, the $3600 spent in acquiring the degree was dissipation of marital property constituting a proper basis for the trial court to include the amount in calculating the net worth of the parties. 386 N.E.2d at 955.

Our supreme court, in *In re Marriage of McManama* (1980), 272 Ind. 483, 399 N.E.2d 371, reversed this court's decision. The court cited *Wilcox* and held the factors set out in IC 31–1–11.5–11 can only affect the marital assets in which a vested present interest exists at the time of dissolution. 399 N.E.2d at 373. The court noted the $3600 award was in actuality an award to be paid from the husband's future income. *Id.* The court further held the only way an award of future income is proper is by way of either support or maintenance, neither of which applied to the wife in that case. *Id.*

The legislature intended the term "property" to be broadly inclusive, as indicated by its definition in IC 31–1–11.5–2(d). However, limits exist upon what may be considered "property", and we do not find the term to mean more than that which is usually understood. The common definition of property is "everything that has an exchangeable value or which goes to make up wealth or estate." BLACK'S LAW DICTIONARY 1382 (rev. 4th ed. 1968). A degree is an intangible which is personal to the holder. It is a piece of paper and has no real value except for what the holder chooses to pursue with it. Potential worth is dependent upon choice and availability of work, whether the holder is good at what she does, or a myriad of other potentialities.

Valuation of a degree is fraught with uncertainty because of the personal factors described above. Even if valuation could be made certain, such valuation, whether based on future earning capacity or upon cost of acquisition, would ultimately result in an award beyond the actual physical assets of the marriage. As noted in *Wilcox* and *McManama,* such award is improper.

Our holding here is consistent with decisions from other jurisdictions. *See In re Marriage of Graham* (1978), 194 Colo. 429, 574 P.2d 75 (holding an M.B.A. degree is not property even under a broad view of the meaning of the term); *Kanta v. Kanta* (S.D.1991), 479 N.W.2d 505 (*quoting Wehrkamp v. Wehrkamp* (S.D.1984), 357 N.W.2d 264, for the proposition that "[t]he factors and variables involved in such a consideration [valuing a degree based on future earnings] are simply too speculative and could only act to turn the possibility of inequity on the one hand into a probability of such on the other"); *Petersen v. Petersen* (Utah 1987), 737 P.2d 237 (holding a medical degree is not property subject to division but may be a basis for alimony); *DeWitt v. DeWitt* (1980), 98 Wis.2d 44, 296 N.W.2d 761 (holding a degree is not property and cannot be valued).

Diane contends the trial court erred in making the following provision in its final order:

The Court finds the following regarding the marital residence:

a. The court finds the marital residence to have a net equity value of Thirty–Four Thousand, Two Hundred Dollars ($34,200.00) which is set over to Wife in the sum of Fourteen Thousand, Three Hundred, Fifty Dollars ($14,350.00) and to Husband in the sum of Nineteen Thousand, Eight Hundred, Fifty Dollars ($19,850.00). The Court finds that this division effects a fifty-fifty (50/50) division of the marital personal and real property.

b. The possession of the marital residence is awarded to Wife subject to the mortgage for so long as she remains single and maintains it as a home for either or both of the children. At the time of sale of the marital residence whether before or after the happening of one of the above events the net proceeds of the sale after gross proceeds are reduced by the expenses of sale and the amounts set over to the respective parties, in the preceding paragraph, if any, shall be divided eight[y] percent (80%) to Wife and twenty percent (20%) to Husband.

(R.185). Diane argues the award of twenty percent of any appreciation unjustly enriches John because he would get twenty percent of any appreciation that may result from possible future improvements to the home.

■ The disposition of property is within the sound discretion of the trial court, and this court will only reverse for an abuse of that discretion. *Hoyle v. Hoyle* (1985), Ind.App., 473 N.E.2d 653, 657. In reviewing the trial court's order, we must determine whether the disposition of the marital assets is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Disposition

must be "just and reasonable". IC 31–1–11.5–11(b). In the present case, the trial court awarded Diane the use of the home as long as at least one of the children of the marriage was in her custody. The court also awarded her $14,350 as her share of the home and eighty percent of the net proceeds occasioned by appreciation upon the sale of the home. The trial court's decision is not against the logic and effect of the facts, and is not rendered unjust because of the asserted, but unsupported, possibility of major improvements to the home.

Diane finally contends the trial court erred when it awarded a dependency exemption to John, the noncustodial parent.[2] The court ordered:

18. The parties shall each file separate tax returns for the year 1990. Wife shall be entitled to claim as her dependent Jane Alyson Stevens and Husband shall be entitled to claim as his dependent Julia Ann Stevens in filing Federal and State income tax returns. Wife shall from time to time execute whatever document may be required to make this provision effective.

(R.185).

■ A trial court cannot allocate a dependency exemption to a noncustodial parent. *Ritchey v. Ritchey* (1990), Ind.App., 556 N.E.2d 1376, 1379. However, it may, in the proper case, order the custodial spouse to execute a waiver. *Id.* If the custodial parent refuses to execute the waiver, the trial court may hold the custodial parent in contempt or adjust the support order to afford the non-custodial parent relief from the additional tax burden from the refusal to sign the waiver. *Id.* Here, although the trial court had the power to order Diane to execute whatever documents were necessary to enable John to claim Julia as a dependent, it did not have the power to allocate the exemption to him. Upon remand, the trial court should clarify

---

2. Diane and John have joint custody of their children. Diane, however, has primary physical custody of the children. For tax purposes, pursuant to 26 U.S.C. § 152(e), the custodial parent is the parent having physical custody for a greater portion of the calendar year. The non-

custodial parent is the parent who is not the custodial parent. Because the children reside with Diane for the greater part of the calendar year, she is the custodial parent. Accordingly, for tax purposes only, John is the noncustodial parent.

its order to bring it into conformance with *Ritchey.*

John charges on cross-appeal the trial court erred when it included the value of an automobile acquired after final separation for distribution. Here, the date of final separation was December 4, 1989, the date on which John filed his petition for dissolution. *See* IC 31–1–11.5–11(a). However, John does not reveal the date of purchase of the automobile. We have no duty to search the record to reverse a trial court's order. *Glenn v. Thatcher Glass Mfg. Co.* (1965), 139 Ind.App. 302, 209 N.E.2d 900, 904. Accordingly, the issue is waived.

■ John also contends the court erred by awarding items of a highly personal and intimate nature to Diane. He contends in light of IC 31–1–11.5–11(c)(2), the court could not have intended for Diane to own books from his grandfather's library, his ancestral photos, his university diplomas, his photo collection and mementos from overseas service.

The trial court ordered:

Wife shall have as her separate property all furniture, furnishings and equipment, all books, clothing, photographs, works of art, records, electronic equipment, cameras, vehicles, and all other movable goods and chattels presently located in the marital home except for Husband's tools and guns and canoe which shall be placed in his possession within thirty days.

(R.184).

We find the trial court erred when it awarded John's personal property to Diane. The trial court's decision here was clearly against the logic and effect of facts and circumstances before it. Even though the dissolution court's disposition of marital property should be considered as a whole, and not item by item, Diane clearly has no right to John's personal effects such as: his university diplomas, his ancestral photographs and books, his military memorabilia and his photo collection, most of which have little or no monetary value.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

GARRARD, J., concurs with separate opinion.

CHEZEM, J., concurs in result with separate opinion.

GARRARD, Judge, concurring.

While I concur with the majority generally and its conclusion that the wife's graduate degree is not properly deemed a marital asset, it should be pointed out that the educational achievements and potential earning life referred to by the court in its findings *do* constitute a valid consideration and basis for determining the appropriate disposition of the marital assets, including the husband's pension rights.

CHEZEM, Judge, concurring in result.

I concur in result because I do not agree that an advanced degree is not a marital asset. Further discussion is necessary regarding the value of an advanced degree or other enhancements of a party's earning ability. This case, however, does not necessitate that discussion.

Rather than merely finding the wife's advanced degree to have been an asset of the marriage, the trial court should have compared the wife's ability to earn and years of work life expectancy against the husband's as the rationale for awarding the husband his pension.

Therefore, I do not concur with the discussion of the division of the marital property.