David A. GRIMES, Appellant–Respondent,

v.

Lucille E. GRIMES, Appellee–Petitioner.

No. 08A04–9902–CV–75.

Court of Appeals of Indiana.

Jan. 14, 2000.

---

Marcel Katz, Lafayette, Indiana, Attorney for Appellant.

Barry T. Emerson, Emerson & Manahan, Delphi, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, David A. Grimes (David), appeals the trial court's division of property in the dissolution of his marriage to Appellee, Lucille E. Grimes (Lucille).

We affirm in part, and reverse and remand in part.

Upon appeal, David presents two issues for our review which we restate as follows:

1) Whether the trial court erred in equally dividing David's ALCOA retirement plan; and

2) Whether the trial court erred in ordering David to be reimbursed only fifty percent (50%) of the post dissolution mortgage payments made by him.

The facts most favorable to the trial court's disposition of the marital property reveal that David and Lucille were married on May 27, 1970. Three children were born during the marriage. At the time of the final hearing, June 12, 1998, only the youngest child was living with Lucille, but he was fully emancipated.

Throughout the marriage, David was employed at ALCOA. At the time of the dissolution, he made approximately $78,000 per year. During the first nineteen years of the marriage, Lucille did not work outside the home. However, Lucille did enter the workforce in 1989 and at the time of the dissolution, she was employed at CTS earning approximately $20,000 per year.

On March 18, 1989, David moved out of the marital residence. Lucille, however, continued to live in the marital residence with the children. Throughout the remainder of the marriage,[1] David and Lucille maintained separate residences, but kept a joint bank account in which David deposited funds for Lucille to use to pay their debts and care for the children. They continued to file joint tax returns through the year 1996 and maintained joint credit card accounts. Lucille was listed as primary beneficiary on David's life insurance and 401(K) plan until she filed for dissolution. They continued to hold the marital residence as tenants by the entirety, refinanced mortgages, and obtained a second mortgage as recently as January 20, 1993.

Lucille filed for dissolution on August 19, 1997. A final hearing was held on June 12, 1998 and a decree of dissolution entered.[2] On November 16, 1998, the trial court entered findings of fact and conclusions of law upon its own motion. The final decree ordered the marital residence to be sold and the net proceeds divided equally. David was ordered to continue making the mortgage, tax, and insurance payments until the house was sold, but before the net proceeds were divided, he was to be reimbursed fifty percent (50%) of the amounts that he paid since August 1, 1998. The decree also awarded Lucille one-half of the present value of David's retirement plan as of the date Lucille filed for dissolution.[3]

When, as here, a trial court makes specific findings upon its own motion, we will not reverse the trial court's findings unless they are clearly erroneous. *In re the Marriage of Snemis* (1991) Ind. App., 575 N.E.2d 650, 652. We will neither reweigh the evidence nor judge the

---

1. Upon appeal, both David and Lucille use March 18, 1989, as the date David permanently left the marital residence. However, in its findings of fact the trial court states that the parties began living separately in 1989, but does not specify a particular day. At the final hearing, Lucille testified that David moved out of the marital residence on March 18, 1989. Later, she testified that even though David moved out in March, she and their son took a trip with him in August of 1989, but upon their return, David left again. Finally, Lucille agreed that David maintained his own home since at least August of 1989. David testified that there had been no marital relationship since at least August of 1989. For the purpose of this appeal, we use March 18, 1989, as the date the parties separated and David established a separate residence.

2. In the decree, the marriage was dissolved but the trial court noted that other pending matters, including the continuation of a provisional order relative to the marital residence, were being taken under advisement. The provisional order provided that David pay the mortgage, tax, and insurance payments for the marital residence while the dissolution was pending.

3. Excluding David's retirement plan and the marital residence, the remainder of the marital estate was divided so that after David paid Lucille $8,326.05 at the time of the sale of the marital residence, the net value of the marital estate that each receives would be equal.

credibility of witnesses. *See Euler v. Euler* (1989) Ind.App., 537 N.E.2d 554, 556. Assuming that findings made are not erroneous, when reviewing a claim of improper division of marital property, the issue is whether the trial court's decision constitutes an abuse of discretion. *Truman v. Truman* (1994) Ind.App., 642 N.E.2d 230, 234. The party challenging the division must overcome a strong presumption that the court considered and complied with the applicable statute. *DeHaan v. DeHaan* (1991) Ind.App., 572 N.E.2d 1315, 1325, *trans. denied.*

### I. Retirement Plan

■ David contends that the trial court erred by awarding Lucille one-half of the value of his ALCOA retirement plan. He argues that an unequal division of his retirement plan is warranted.[4] The issue, however, is not whether the trial court may have reasonably divided the retirement plan other than as it did, but whether the equal division is an abuse of discretion.

Ind.Code 31–15–7–4(a) (Burns Code Ed. Repl.1997) provides:

"[i]n an action for dissolution of marriage . . . the court shall divide the property of the parties, whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

(A) after the marriage; and

(B) before final separation of the parties; or

(3) acquired by their joint efforts."[5]

David does not dispute the fact that the retirement plan was marital property subject to division, but he does dispute the trial court's award of one-half of his retirement plan to Lucille.

The date of final separation is defined as the date of the filing of the petition for dissolution of marriage. I.C. 31–9–2–46 (Burns Code Ed.Repl.1997). In this case, the date of final separation was August 19, 1997. David asserts that the trial court is not bound to use the date of final separation, but that it is within its discretion to consider the date the parties no longer resided together in its just and reasonable division of property. *Hunter v. Hunter* (1986) Ind.App., 498 N.E.2d 1278, 1295. Specifically, David argues that the trial court should not have given Lucille any portion of his retirement plan earned and accumulated after the parties no longer resided together after March of 1989. While it is true that the trial court could have exercised its discretion and considered the date the parties no longer resided together, under the circumstances, it was not an abuse of discretion for the trial court to refuse to consider that date in dividing the marital property. David and Lucille may have lived in separate residences, but they still conducted themselves as husband and wife in many respects such as filing joint tax returns until 1996, continuing to hold joint bank accounts, continuing to maintain joint credit card accounts, continuing to hold the marital residence as tenants by the entirety, listing Lucille as a primary beneficiary on

---

**4.** At trial and upon appeal, David argues that the most equitable method for dividing his retirement plan would be for him to receive eighty percent (80%) of the present value of the retirement plan while Lucille would receive twenty percent (20%). This breakdown was arrived at by dividing the monthly value of David's retirement plan in 1989, which was $514.67, by the monthly value of his retirement plan at the time the petition for dissolution was filed which was $1,224 which equals forty-two percent (42%). David asserts that since Lucille would have been entitled to one-half of his retirement plan value if they had divorced in 1989, she should receive one-half of that value now or approximately twenty percent (20%).

**5.** Property includes "a present right to withdraw pension or retirement benefits . . . [and] the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested . . . but that are payable after the dissolution of marriage." I.C. 31–9–2–98 (Burns Code Ed. Repl.1997).

David's life insurance and 401(K) plan at ALCOA until Lucille filed for dissolution, and jointly refinancing mortgages and acquiring a second mortgage as late as January 20, 1993.

■ David maintains that the trial court abused its discretion by failing to find that he met his burden of rebutting the presumption that an equal division of his retirement plan would be just and reasonable. IND.CODE 31–15–7–5 (Burns Code Ed.Repl.1997) states:

> "[t]he court shall presume that an equal division of the martial property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> (A) before the marriage; or
>
> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective. . . .
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:
>
> (A) a final division of property; and
>
> (B) a final determination of the property rights of the parties."

David contends that he rebutted the presumption of an equal distribution and that he should have received a greater share of his retirement plan because after their physical separation in 1989, the earnings and accumulation to the plan were not acquired by the joint effort of the parties. He concedes that the portion of the retirement plan acquired while the parties were still living together should be equally divided because Lucille contributed to its accumulation by providing a home for David and their children.[6] David points to the fact that after the separation in 1989, he maintained his own household while also providing for Lucille and the children at the marital residence. He also points out that Lucille did not contribute anything to the maintenance of his separate residence. David contends that the balance of the statutory factors to be considered to rebut the presumption of an equal distribution favor him heavily because it was his effort alone which allowed him to accumulate retirement benefits after the parties' physical separation.

We do not find that the trial court abused its discretion in this regard. It stated that it considered the statutory factors, but that David did not rebut the presumption of an equal division of the marital property with evidence that he contributed more to the marital estate due to their physical separation in 1989. There was evidence which would allow the trial court to so conclude. While Lucille may not have made as large of a financial contribution, she did work after the physical separation and also contributed by maintaining the marital residence and car-

6. David asserts that the trial court incorrectly concluded in its finding of fact 9(C)(2) that Lucille was the caretaker of three children when only two children were still living in her home after he left the marital residence in 1989. At the final hearing, David testified that their oldest child had moved out of the marital residence to attend Ball State University before he moved out in 1989. However, Lucille testified that their oldest child went to Ball State for a year and then moved back home and went to Purdue for a couple of years before moving out. Lucille admitted that she did not recall the date when the oldest child moved out. Thus, there was testimony in the record from which the trial court could have inferred that all three children were still living at home at some point after the parties separated in 1989. Be that as it may, whether there were two or three children living at home when David moved out of the marital residence has no bearing on the resolution of this appeal.

ing for the children. Non-income producing contributions are to be considered. *See* I.C. 31–15–7–5(1). Further, the court could have considered the economic disparity between the parties. *See* I.C. 31–15–7–5(3). David makes approximately $78,000 while Lucille makes approximately $20,000. Even though a different trier of fact might have weighed the factors differently, the equal division of the retirement plan is not an error as a matter of law.

David cites cases in which courts have considered a deviation from an equal division. In *Lulay v. Lulay* (1991) Ind.App., 583 N.E.2d 171, *modified by* 591 N.E.2d 154, the court affirmed an unequal award of a portion of pension benefits of the husband which vested during the marriage, but accumulated before the marriage because the wife did not help the husband acquire those benefits. The court held that the unequal award was not an abuse of discretion. The decision does not support David's proposition that it is an abuse of discretion to not make an unequal distribution. In any event, we find the circumstances in the instant case distinguishable. David does not cite any evidence indicating that a portion of David's retirement plan accumulated before the marriage, but vested after marriage.[7] Further, while Lucille may not have contributed as much financially as David, she contributed throughout the marriage in other ways by caring for the children and maintaining the household.

In *Fields v. Fields* (1993) Ind.App., 625 N.E.2d 1266, *trans. denied,* the husband filed a petition for dissolution in June of 1989. Subsequently, he started a business which became moderately profitable. The parties reconciled for approximately six months in 1991 during which time the wife prepared evening meals and the couple slept together in the marital home, but the husband continued to maintain a separate residence. During the reconciliation, he paid the wife's household bills, but the wife was otherwise self-supporting. The parties divorced in 1992, and the wife argued that the assets of the business should be included in the marital estate. The wife maintained that because the parties reconciled, the assets from the business were acquired by joint efforts and should be included in the marital estate. The evidence reflected that the wife did not contribute to the business financially or by providing services. The wife also argued that maintaining the household constituted efforts toward the business, but the court stated that the trial court found otherwise and the record supports its finding.

*Fields* may be distinguished in that the issue there was whether an asset (the business) not in existence at the time of the filing of the dissolution petition was includable as a marital asset. This court held that the trial court appropriately excluded the business as an asset. In the case before us, the issue concerns the propor-

---

7. In his brief, David does state that the trial court ignored that portion of the pension which accrued during the three years prior to the marriage. Be that as it may, the record does not make clear nor does David demonstrate when his retirement plan began to accrue. However, we do know that David began working at ALCOA in 1967 and that he had been working at ALCOA for twenty-nine (29) years and nine (9) months as of August 19, 1997. Also, as of August 19, 1997, the whole year closest to David's age was 48. Further, on June 12, 1998, Lucille testified that David was 48. With this information, it may be inferred that David started working for ALCOA at age 18, at the latest. Eligibility for David's retirement plan begins when certain requirements are met including: reach-

ing age 21 and having at least one year of pension service, or if the employee is hired on his/her 18th birthday and remains in continuous employment covered by the rules until he/she becomes a participant at age 21. David does not present any evidence that he began work for ALCOA precisely on his 18th birthday. Assuming David started in 1967 at age 18, he was not eligible for the retirement plan until sometime in 1970, at the earliest. The parties were married on May 27, 1970. Thus, the evidence reflects that at the time David married Lucille, he would have been eligible for the retirement plan, if at all, for only a few months. David does not present any evidence that demonstrates a period of time before the marriage during which he accumulated pension benefits.

tionate distribution of an asset which, as a matter of law, was a marital asset and whether the distribution made was permissible.

In any event, to the extent that the reconciliation of the parties in *Fields* is analogous to the continuation of many financial aspects of the martial relationship as between David and Lucille, we decline to find *Fields* as controlling authority.

■ David maintains that the parties' circumstances after the physical separation were equitably no different than if the parties had divorced at that time. If they had divorced, David contends he would have been ordered to pay child support[8] to Lucille because she would presumably have had custody of the children. He suggests that because he contributed a greater amount financially under the circumstances than if there had been a dissolution at the time of the physical separation, the trial court erred in considering that circumstance as a factor weighing in favor of joint contribution to the accumulation of David's retirement plan.

If the marriage were irreparably and irretrievably broken at the time of separation in 1989, a petition for dissolution would have been appropriate. The fact remains that David did not file for dissolution and the parties continued to conduct their financial affairs as husband and wife. He continued to provide financial support and Lucille continued to maintain the household and care for the children just as she had done before the physical separation. In addition, Lucille also worked after the physical separation. The presumption favors an equal distribution of the marital property and the trial court did not abuse its discretion in finding that David did not rebut the presumption.

## II. Mortgage

David argues that by reimbursing him for only fifty percent (50%) of the mort-

gage, tax, and insurance payments made by him rather than the full one hundred percent (100%), the trial court was effectively providing maintenance to Lucille which was impermissible.

■ The trial court stated in its conclusions that "[n]either of the parties is physically or mentally incapacitated or entitled to maintenance." Record at 86. It further stated that the factors in I .C. 31–15–7–5 had been considered and that "an equal division of the marital estate is warranted" and the presumption of an equal division of the property "has not been rebutted by the Respondent/Husband's evidence that he contributed more to the marital estate due to their physical separation in 1989." Record at 86. The trial court then stated that "[t]he parties are each awarded fifty percent (50%) of the marital residence real estate. The parties shall sell the real estate and divide the net sale proceeds." Record at 86. David was required to make the mortgage, tax, and insurance payments, *"provided, however,* that before the parties divide the net proceeds ... [he] shall first be reimbursed fifty percent (50%) of the amounts that he has paid since August 1, 1998, toward the mortgage payments, taxes and insurance on the marital residence." Record at 86. (Original emphasis).

Here, the trial court stated that an equal division of the marital estate was warranted and that it was awarding each party fifty percent (50%) of the marital residence and that David did not rebut the presumption of an equal distribution of the marital property. Be that as it may, by only reimbursing David fifty percent (50%) of the amounts he paid since August 1, 1998, until the sale of the marital residence, the trial court effectuated an unequal distribution of the marital property.

---

8. The money which David paid after the parties physically separated was not child support. It was not court ordered. When a noncustodial parent gratuitously makes payments in the nature of child support, it is considered a gift and the non-custodial parent is not entitled to credit for the payment. *See Blume v. Stewart* (1999) Ind.App., 715 N.E.2d 913, 915.

This unequal distribution may best be illustrated by an example. Here, the marital residence is worth approximately $125,000. There is a mortgage on the marital residence for $30,872.48 and an equity loan against the marital residence of $8,000 for total debt against the equity in the marital residence in the amount of $38,872.48. For purposes of simplification, we will assume that the entire amount of David's payments go toward a reduction in principal and thus an increase in equity. We will assume that David made $6,000 in payments before the marital residence sold. This would reduce the debt against the residence to $32,872.48. We will also assume that the residence sold for $125,000. The net proceeds from the sale would be $125,000 minus $32,872.48 or $92,127.52. Upon the sale of the marital residence, David would be entitled to $3,000, or fifty percent (50%) of the payments he made, before the net proceeds are divided. By subtracting the $3,000 reimbursement to David from $92,127.52 there would be $89,127.52 of net proceeds to divide between the parties.

Thus, David will not be fully reimbursed for the increase in equity brought about by his payments, but instead, he will get one half of the net proceeds after he receives a fifty percent (50%) reimbursement. Lucille receives a windfall from the increase in equity made solely by David's payments. Thus, an unequal distribution results.

Lucille maintains that based upon the facts of this case, the trial court made a determination as to the preservation of the marital residence taking into consideration the parties joint ownership, the order of sale, and the present economic circumstances of the parties. She cites two cases to support her position that the trial court's decision should stand.

In *Prenatt v. Stevens* (1992) Ind.App., 598 N.E.2d 616, *trans. denied,* the wife argued that it unjustly enriched the husband to award him twenty percent (20%) and her eighty percent (80%) of any appreciation in the real estate from the date of the dissolution decree until the sale because she was making all the payments for mortgage, taxes, insurance, and improvements. The court held that trial court did not abuse its discretion and its decision was not unjust because the possibility of major improvements to the home was unsupported. While the wife in *Prenatt* lost twenty percent (20%) of any increase in equity made by her payments, David will lose fifty percent (50%) of any increase in equity of the marital residence made by his payments. To the extent that *Prenatt* could be construed to give the husband in that case a twenty percent (20%) windfall of any increase in equity made by the payments of the wife, we decline to follow *Prenatt.*

In *Wagner v. Wagner* (1986) Ind.App., 491 N.E.2d 549, the husband argued that the trial court abused its discretion in ordering him to pay one-half of the mortgage payments on the marital residence while his ex-wife and children had exclusive possession of it. The court held that the trial court did not abuse its discretion because the husband would share equally in the proceeds from the sale of the house. Unlike *Wagner,* David, in this case, was ordered to pay one hundred percent (100%) of the mortgage, tax, and insurance payments until the marital residence was sold but was only credited for fifty percent (50%) of those payments.

We reverse and remand to the trial court to either give David a one hundred percent (100%) credit required under the presumption of an equal division of the marital property or to reconsider the property distribution in light of the factors which were a part of the record at the time of the original decree.

The judgment is affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion.

GARRARD, J., and BAILEY, J., concur.