## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 30 2020, 11:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone
Anderson, Indiana

ATTORNEY FOR APPELLEE

Scott A. Norrick
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronald E. Summers, III, <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Richard Evans as Personal Representative of Mary E. Summers and Richard Evans, <br><br> *Appellee-Petitioner.* | October 30, 2020 <br><br> Court of Appeals Case No. 20A-DR-288 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Andrew R. Hopper, Judge <br><br> The Honorable Christopher Cage, Master Commissioner <br><br> Trial Court Cause No. 48C03-1611-DR-705 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, Ronald Summers III (Husband), appeals the trial court's Order dividing the marital estate.

Affirmed in part, reversed in part, and remanded with instructions.

# ISSUES

Husband presents us with two issues, which we restate as the following:

>   (1) Whether the trial court's failure to divide certain assets was clearly erroneous; and

>   (2) Whether the trial court's order that Husband make an equalization payment was clearly erroneous.

# FACTS AND PROCEDURAL HISTORY

Prior to their marriage, Husband and Mary Evans (Wife) executed the Prenuptial Agreement which stipulated that it would also function as a dissolution agreement in the event the marriage was terminated by any other reason than the death of Husband or Wife. Under the terms of the Prenuptial Agreement, real and personal property separately owned before marriage was to remain the individual property of that party. Jointly owned real and personal property was to be divided equally. A list of property owned by each party was appended to the Prenuptial Agreement that showed that Husband had approximately $58,000 in premarital net assets, while Wife had $682,500 listed

as net assets. The residence located at 2306 East US 36, Markleville, Indiana, (Wife's home), and family farmland with a farmhouse (the farmhouse) nearby was specifically reserved to Wife as premarital property. Husband and Wife married June 3, 1995. The parties each had children from previous marriages, but no children were born of their marriage.

[5] The parties resided in Wife's home during the marriage. On May 28, 2001, the parties took out a second mortgage (the Home Equity Loan) on Wife's home and used the funds to renovate Wife's home, to renovate the farmhouse, and to purchase rental homes and real estate as investment properties. Husband performed the labor necessary to construct two additions to Wife's home and to add a rental unit to the farmhouse. During the marriage, the parties purchased ten rental properties in Madison County, six of which were purchased after the Home Equity Loan was procured. The parties also purchased a number of timeshares. Husband and Wife accumulated personal property during the marriage and jointly purchased some heavy machinery, including a backhoe that they used in a joint business venture.

[6] The parties separated on November 22, 2016. On November 30, 2016, Wife filed a petition for dissolution. On November 30, 2016, Wife also revoked Husband's power of attorney.

[7] On January 5, 2017, the trial court held a provisional hearing. On January 20, 2017, the trial court issued its Provisional Orders, pursuant to which Husband would have access to Wife's home all day every Saturday and Sunday during

January 2017 to remove his property. From the couple's stock of farm machinery, Husband was allowed to take "certain implements" recently acquired by the couple. (Appellant's App. Vol. II, p. 38). Any disputed household item was not to be removed from Wife's home but could be identified or photographed for future litigation. Husband was to provide Wife with a list of his personal property requests for her to consider. According to the terms of the Prenuptial Agreement, Wife's home was provisionally set over to Wife. The trial court ordered Husband to provisionally make the Home Equity Loan payment. Husband was also to be responsible for maintaining and operating the parties' rental properties with a monthly accounting to be rendered to Wife. The trial court noted that it had heard evidence that, near or at the time of the filing of the petition for dissolution, Husband had withdrawn approximately $35,346 from the parties' joint bank account, after which Wife withdrew the remaining balance of approximately $11,000. In light of this evidence, the trial court provisionally ordered the parties' timeshares to be set over to Husband and ordered him to make the timeshare payments, including the payment on the Blue/Green timeshare, pending the final hearing when the subject could be further addressed. Husband was also granted limited access to the parties' office to procure documents to render an accounting to Wife of how he had exercised Wife's power of attorney before she revoked it.

[8] On May 4, 2017, Wife filed a motion for summary disposition pursuant to the Prenuptial Agreement. On May 8, 2017, Husband filed a notice of affirmative defense to the dissolution petition in which he asserted that Wife was

incompetent at the time she executed the petition for dissolution and that Wife's son, Richard Evans (Richard), had asserted undue influence over Wife to execute the petition for dissolution. Husband sought a stay in the dissolution proceedings until Wife's competency could be established. In July 2017, Richard was appointed guardian over the person and estate of Wife. On July 13, 2017, Richard filed a motion to intervene in the instant litigation, which the trial court granted. On July 24, 2018, the parties filed a stipulated agreement to summarily dissolve the marriage while reserving the issues of property division for later resolution. On July 26, 2018, the trial court entered an order dissolving the parties' marriage.

[9] On February 20, 2019, Wife died prior to the division of the parties' joint assets. Richard continued to intervene in the dissolution proceedings in his capacity as the personal representative of Wife's estate. The parties stipulated that, because the trial court dissolved the marriage prior to Wife's death, the trial court still had jurisdiction to divide the parties' property.

[10] On April 2, 2019, and August 20, 2019, the trial court held the final hearing. Evidence was admitted regarding the parties' disputed personal property, including a collection of dishes (Fiestaware), some of which was for everyday use and some of which was more valuable and collectible. Richard's wife, Lana Evans (Evans), indicated that Wife had a collection of Fiestaware prior to the marriage and that Wife collected the dishes, while Husband preferred to collect clocks. During the marriage a portion of the Fiestaware collection had been distributed among Husband's and Wife's family members. According to Evans,

the Fiestaware that remained in Wife's home belonged to Wife. Evans also testified that a set of silverware belonging to Husband's mother was not in Wife's home and that Husband could have the ceramic molds, windmill, radial saw, and wood splitter that he requested.

[11] Wife's estate presented evidence through home inspector Jeffrey Upton (Upton) that the additions Husband had completed to Wife's home were "very amateurish," and resulted in safety issues and code violations due to poor construction and improper materials being used. (Transcript Vol. I, p. 13). Upton cited improper deck construction, a poorly constructed foundation, multiple issues with the installation of water, drain, and ventilation lines, and poorly constructed floors as major issues with the additions. It was Upton's opinion that Husband's remodeling of Wife's home added no value to the real estate and that repairs and demolition of the additions were needed.

[12] Husband acknowledged at the final hearing that he had exited the marriage with a far greater net worth than he had at its inception and that Wife's finances had declined during the same period. Husband testified that he did not know what remained of the Fiestaware collection and that the parties had mixed their Fiestaware such that it was difficult to discern who owned individual pieces. Husband requested the backhoe and believed that the backhoe had already been distributed to him under the Provisional Orders. Husband related that he had withdrawn the majority of the parties' joint bank account balance because he believed it was his and that he had stopped making the Home Equity Loan payments in January 2019 because he felt he had paid his half of the loan. The

payments on the Home Equity Loan for January through April 2019 were later made by Wife's estate when the loan was put into foreclosure. Husband had not provided any income from the parties' rental properties to Wife during the provisional period. The gross income from the rentals was in excess of $115,000 from 2016 through 2018. As to the work he did on Wife's home, Husband stated that he performed the work knowing that he would not receive any of the value of it and that he did the work anyway because he cared about Wife and she wanted it. Husband felt that the value of the labor he performed on Wife's home and the farmhouse should balance the equalization payment proposed by Wife.

[13] Neither party requested that the trial court enter special findings and conclusions thereon, but the parties did submit a list of requests to the trial court. Husband requested a "fair division" of the marital estate and specifically requested that the rentals and half of the Fiestaware, among other things, be awarded to him. (Appellant's App. Vol. II, p. 86). Husband also requested that the parties' interest in the Blue/Green timeshare be sold and that the net proceeds be divided equally. Wife's estate requested the Fiestaware that remained at her home and the backhoe, among other personal property.

[14] On January 8, 2020, the trial court issued its Order dividing the marital estate and entered the following relevant findings and conclusions:

> 5. That a valid prenuptial agreement was executed by the parties on April 28, 1995.

6.  That pursuant to said prenuptial agreement, [Wife's home] belonged to Wife as her sole property and is not considered marital property subject to division herein.

7.  The [c]ourt issued a provisional order requiring Husband to make payments on the Home Equity [Loan]; and said funds were used in part to buy rental properties for which Husband collected rents during the provisional period.

8.  A citation alleging Husband's failure to comply with said provisional order was filed on behalf of Wife.

9.  That the issue is moot as Husband has been ordered to assume the full responsibility for said debt in the final division.

* * * *

12.  Evidence was presented to show that Husband put some "sweat" equity into the [farmhouse] and also [Wife's home].

13.  Evidence was also presented that some of the work was not up to code and detracted from the value of the home.

14.  The [c]ourt finds that the value of the work done is cancelled out by the portions of the work that detract from the value: accordingly, the [c]ourt finds that neither party shall be awarded any sums therein.

15.  The evidence demonstrated that despite the prenuptial agreement; the parties nonetheless at some points over the course of a long marriage, [] com[m]ingled their assets.

16. This com[m]ingling and lack of documentation presented at trial make it impossible for the [c]ourt to differentiate separate property from joint property except as otherwise stated herein.

* * * *

G. All personal property has already been divided to the satisfaction of the parties except that Husband shall be entitled to receive the windmill, and paintings from his mother . . . Any other personal property requested by either party at [the] final hearing is found to be of negligible value and shall remain in the possession of the party having that item at the time of filing.

(Appellant's App. Vol. II, pp. 13-16). The trial court awarded Husband seven of the parties' nine rental properties and the Club Crown Point timeshare. The trial court ordered the parties' other timeshares, including the Blue/Green timeshare, to be sold and the net proceeds to be equally divided. Husband was assigned the balance of the Home Equity Loan. The parties' other joint assets and liabilities were distributed, resulting in the trial court requiring Husband to make an equalization payment to Wife of $102,229 in order to achieve an equal distribution.

[15] Husband now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[16] Husband challenges the trial court's Order dividing the marital estate. Because the trial court issued findings and conclusions, we apply a two-tiered standard

of review. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). "First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment." *Id.* The trial court's findings control unless there are no facts in the record to support them, either directly or by inference. *Id.* We will set aside a trial court's judgment only if it is clearly erroneous, and a judgment is 'clearly erroneous' if, after review of the evidence most favorable to it, we are firmly convinced that a mistake has been made. *Id.* "[A] general judgment will control as to the issues upon which there are no findings," and we will affirm a general judgment if it can be sustained on any legal theory supported by the evidence. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997).

[17]     In addition, the parties executed the Prenuptial Agreement, and its validity was not contested at trial. Such agreements are considered contracts, and standard principles regarding contract interpretation apply. *Fetters v. Fetters*, 26 N.E.3d 1016, 1020 (Ind. Ct. App. 2015), *trans. denied*. Inasmuch as our review entails interpretation of the Prenuptial Agreement, these are questions of law that we review *de novo*. *Carmer v. Carmer*, 45 N.E.3d 512, 518 n.1 (Ind. Ct. App. 2015). In undertaking our review, we must apply the provisions of a prenuptial agreement according to their plain and ordinary meaning. *Daugherty v. Daugherty*, 816 N.E.2d 1180, 1183 (Ind. Ct. App. 2004). If the language of a premarital agreement is unambiguous, the intent of the parties must be determined from its four corners. *Id*. at 1183-84. Premarital agreements "are favored by the law and will be liberally construed to realize the parties' intentions." *Id*. at 1184.

## II. *Division of Marital Estate*

[18] Husband contends that the trial court erred when it failed to divide certain tangible personal property and when it ordered him to pay Wife an equalization payment. We address each of these contentions in turn.

### A. *Tangible Personal Property*

[19] Husband contends that the trial court should be directed to award half the Fiestaware, his mother's silverware set, a 4-wheeler, a log-splitter, ceramic molds, a radial saw, and the parties' backhoe to him. Article IV of the Prenuptial Agreement, entitled "Termination of Marriage Other Than by Death", provided the following:

> All items of tangible personal property, including artwork, shall be divided as follows:
>
> (i) All items of tangible personal property belonging to [Wife] prior to the marriage shall be and remain her property.
>
> (ii) All items of tangible personal property belonging to [Husband] prior to the marriage shall be and remain his property.
>
> (iii) All other items of tangible personal property acquired after their marriage shall be appraised and be divided equally between the parties.

(Appellant's App. Vol. II, p. 24). Section 8.2, entitled "Amendments", provided in relevant part that

> [t]he parties agree that the separate property of either party shall not be converted into marital property, community or quasi-community property, or the separate property of the other party, and that a commingling of the separate property of a party with the separate property of the other will not result in such property's conversion from separate to marital, community, quasi-community or separate property of the other party, except as may be done by an instrument in writing signed by both parties or as may be a gift to the other party[.]

(Appellant's App. Vol. II, pp. 26-27). Thus, according to the terms of the Prenuptial Agreement, the timing of the acquisition of tangible personal property determined its disposition upon dissolution, and, therefore, any party asserting a claim over a certain piece of tangible personal property was required to establish that it had been acquired before the marriage. If the party established that the tangible piece of personal property was acquired after the marriage, he or she would be entitled to half of it.

### i. Fiestaware

[20] Ownership of the remaining Fiestaware was contested. Evidence was admitted at trial that Wife and Husband each owned some Fiestaware prior to marriage and that some had been acquired after marriage. The parties mixed their Fiestaware pieces and did not keep an inventory or accounting of the collection. Some of the collection was distributed to Husband's and Wife's family members during Wife's lifetime. Under the Provisional Orders, Husband was to retrieve his separate property from Wife's home in January 2017 and document any contested items for later resolution. Husband had access to the Fiestaware in January 2017 to inventory the collection and identify any

disputed pieces, but he did not do so. Husband did not know if any of his separate Fiestaware pieces remained at Wife's home. Evans testified that the remaining Fiestaware pieces belonged to Wife. Neither party had the disputed items appraised for trial or presented any evidence of their current value.

[21] The trial court concluded that the parties' commingling of assets and the paucity of evidence regarding ownership rendered it, in some instances, "impossible for the [c]ourt to differentiate separate property from joint property except as otherwise stated herein." (Appellant's App. Vol. II, p. 15). We conclude that this finding, as it pertained to the Fiestaware, was supported by the evidence, and, therefore, was not clearly erroneous. *See Quinn*, 62 N.E.3d at 1220. The trial court made specific findings regarding the ownership of some of the parties' tangible personal property, but not the Fiestaware. The trial court found that any items upon which it had not entered specific findings of ownership had negligible value and would remain the property of the person currently in possession of it. Because Husband failed to demonstrate at trial that any of the remaining Fiestaware was either acquired by him before the marriage or jointly after marriage, he failed to establish under the terms of the Prenuptial Agreement that he was entitled to any part of it. Therefore, we are not "firmly convinced" that the trial court erred when it awarded the remaining Fiestaware to the party currently in possession of it, namely, Wife's estate. *See id*.

### ii. Silverware Set

[22] The trial court did not enter any findings or conclusions thereon regarding Husband's mother's silverware set. Wife did not contest that the silver set was separate property to be set over to Husband under the terms of the Prenuptial Agreement, but she did dispute that the set was currently in the possession of Wife's estate. Husband had access to Wife's home in January 2017 to retrieve the set if it had been in the home. Husband did not testify at trial that he had observed the silverware set was in Wife's home at that time. According to Evans, the silverware set at issue was not at Wife's home, and there was no other evidence presented at trial that it was still in existence. Because there was no evidence in the record that the silverware set still existed, we are not "firmly convinced" that the trial court erred by not awarding the asset to Husband. *See id*.

### iii. 4-Wheeler

[23] Our review of the record indicates that, although the 4-wheeler was listed on Husband's financial declaration prepared for the instant litigation, it was not mentioned by either party at trial or in the specific property demands submitted to the trial court by the parties. No evidence was presented at trial regarding when the 4-wheeler was acquired or even if it was still part of the marital estate. Given this lack of evidence regarding the 4-wheeler, we conclude that Husband has failed to establish that the trial court clearly erred by failing to specifically award it to him. *See id*.

#### iv. Log-Splitter, Ceramic Molds, Radial Saw

[24] At trial Evans and Richard conceded ownership to Husband of the log-splitter, ceramic molds, and radial saw he requested. "[A] clear and unequivocal admission of fact, or a formal stipulation that concedes any element of a claim or defense, is a binding judicial admission." *Bandini v. Bandini*, 935 N.E.2d 253, 265 (Ind. Ct. App. 2010). The trial court did not specifically address these conceded items in its Order, but it did find that "[a]ll personal property has already been divided to the satisfaction of the parties except" some items that it specifically addressed. (Appellant's App. Vol. II, p. 16). We conclude that this finding sufficiently encompassed the conceded items.

#### v. Backhoe

[25] Ownership of the backhoe was contested. Although Husband asserted at trial that the backhoe had been provisionally awarded to him, the trial court's Provisional Order only mentioned "certain implements," and, because the transcript of the provisional hearing is not before us, we cannot further assess that claim. (Appellant's App. Vol. II, p. 38). However, the only evidence presented at trial was that the backhoe was jointly purchased by the parties for use in their business during the marriage. Thus, the backhoe was not one of the assets which "com[m]ingling and lack of documentation presented at trial" made it impossible to determine if it was separate or joint property. (Appellant's App. Vol. II, p. 15). Under Article IV, Section (iii), of the Prenuptial Agreement, this was a joint asset subject to equal division upon dissolution. Therefore, we conclude that the trial court's failure to divide the

backhoe under the terms of the Prenuptial Agreement upon dissolution was clearly erroneous, and we remand for valuation and equal division of this asset.

## B. *Equalization Payment*

Husband also challenges the trial court's Order directing him to pay an equalization payment of $102,229 to Wife. Husband essentially argues that his provisional payment of the Blue/Green timeshare payments, the assignment to Wife of her home and the farmhouse which had been remodeled with funds from the Home Equity Loan, his work on the farmhouse, and the hardship resulting to him from the equalization payment should have resulted in a lesser or no equalization payment to Wife. We address each of these arguments in turn.

### i. *Timeshare Payments*

The trial court ordered the parties' interests in the Blue/Green timeshares to be sold and the net profits to be split equally. The Prenuptial Agreement contained the following relevant provision:

> Any joint savings account, joint checking account, joint certificate of deposit or joint investment, including, but not limited to real estate, stocks and bonds, shall be divided equally between the parties.

(Appellant's App. Vol. II, p. 24). The evidence at trial was that the timeshares were acquired in both parties' names after the marriage. The trial court's Order divided the net value of the timeshare equally between the parties and gave effect to the unambiguous intention of the parties in entering into the Prenuptial

Agreement. Therefore, we conclude that the trial court's division of this joint asset was not clearly erroneous. *See Quinn*, 62 N.E.3d at 1220.

[28] Husband argues that the trial court's division of this asset unjustly enriches Wife because he made the Blue/Green timeshare payments under the provisional orders, which he contends amounted to $9,000. Because the trial court ordered the timeshares to be sold and the net profits to be split equally, Husband contends that Wife received an equal share of the benefit of the asset without sharing equally in the burden attached to it. However, Husband withdrew over $35,000 from the parties' joint bank account on the day Wife filed the petition for dissolution. The trial court noted that fact in the Provisional Orders and directed Husband to make the timeshare payments. At the final hearing, Husband acknowledged that the joint bank account was a joint asset that was subject to division by the trial court. Husband does not contend that the trial court abused its discretion when it ordered him to extinguish the timeshare payments using what he conceded at trial was a joint asset, more than half of which he had already reserved to himself. We do not find the cases relied upon by Husband, namely *Bojrab v. Bojrab*, 786 N.E.2d 713 (Ind. Ct. App. 2003), *partially vacated on other grounds*, and *Grimes v. Grimes*, 722 N.E.2d 374 (Ind. Ct. App. 2000), *trans. denied*, to be persuasive because neither entailed circumstances similar to those at hand wherein a spouse had already withdrawn a substantial sum of money from a joint bank account. Accordingly, we find no merit in Husband's argument that Wife was unjustly

enriched by the trial court's Order dividing the net profits of the sale of the timeshares equally between the parties.

*ii. Home Equity Loan*

[29] Husband further contends that Wife was unjustly enriched by the trial court's assignment of the entirety of the Home Equity Loan to him. The Prenuptial Agreement contained the following relevant provision:

> In the event of dissolution or separation, [Wife] shall assume responsibility for her separate debts and liabilities; [Husband] shall assume responsibility for his separate debts and liabilities; and *the joint debts shall be divided according to the benefit each received from the use of the borrowed funds.*

(Appellant's App. Vol. II, p. 24) (emphasis added). Citing this provision in the Prenuptial Agreement, Husband's argument on this point is that some of the Home Equity Loan was used to remodel Wife's home and the farmhouse which were set over to her under the terms of the Prenuptial Agreement, and, thus, Wife should have been assigned some of the debt incurred.

[30] We find this argument to be unavailing for at least three reasons. First, any funds from the Home Equity Loan used to remodel Wife's home did not result in any value being added to her property, so she was not enriched, unjustly or otherwise, by any proceeds of the Home Equity Loan used for remodeling her home. Second, according to the terms of the Prenuptial Agreement, Wife's home and the farmhouse were to be set over to Wife upon dissolution, yet Husband knowingly allowed funds from the Home Equity Loan to be used for

their remodeling. Lastly, the parties used some of the proceeds of the Home Equity Loan to purchase six rental properties, all of which were assigned by the trial court to Husband. Husband contends that two rentals were awarded to Wife, one at 6885 S 200 E and another adjacent to it at 6931 S 200 E, and that "[t]here is nothing in the record to show that those properties were not acquired with funds from the home equity line of credit." (Appellant's Br. p. 19). However, Husband's own summary of the parties' rental acquisitions admitted at trial showed those two rentals were acquired in 1999, before the Home Equity Loan was taken out by the parties. In short, we cannot conclude that the trial court's failure to assign Wife some of the Home Equity Loan debt resulted in unjust enrichment to her or rendered the equalization payment clearly erroneous.

### iii. Husband's Sweat Equity in the Farmhouse

[31] Husband argued at trial that his labor on Wife's home and the farmhouse should cancel out any equalization payment from him to Wife. The trial court found that evidence had been presented that Husband's labor on Wife's home had been of poor quality and had detracted from its value. The trial court, therefore, declined to assign either party any value for that work. Husband argues to us that, since there was no evidence presented at trial that his work on the farmhouse had been of similar shoddy quality, he was entitled to some credit for it.

[32] In assessing this claim, we note that, although Husband claimed at trial that the value of his labor on Wife's home and the farmhouse had a value of $100,000,

he offered no other evidence to support that claim, nor did he testify how much of that value could be ascribed solely to his work on the farmhouse. The trial court was not obligated to believe Husband's claim of the value of his labor, and we cannot say that the trial court committed clear error by failing to ascribe some unspecified value to the labor performed by Husband on the farmhouse. In addition, as noted above, Husband knew when he performed work on the farmhouse that, in the event of dissolution, it was real estate that would be set over to Wife under the provisions of the Prenuptial Agreement, yet he knowingly did the work anyway. The Prenuptial Agreement allowed for gifting between the parties and provided that it "shall be presumed that any property which either party received from the other is a gift, unless there is a written document signed by the donor to the contrary." (Appellant's App. Vol. II, p. 25). We conclude that Husband gifted his labor on the farmhouse to Wife and the trial court, therefore, did not commit clear error by failing to ascribe a credit to him.

*iv. Hardship*

[33] Husband also argues that we should vacate the equalization payment because it results in hardship to him. Husband contends that he will be forced to liquidate or mortgage assets in order to make the equalization payment and that "[s]ince [W]ife is deceased she has no economic needs." (Appellant's Br. p. 13). Husband also contends that liquidation of his investment accounts might add to his taxable income, increase his tax burden, and, therefore, decrease his assets.

Husband presented no evidence to the trial court regarding transaction costs of accessing funds to meet an equalization payment. In addition, Husband's arguments regarding his increased tax burden are speculative at best, as many factors such as other income and losses may impact Husband's effective tax rate apart from income attributable to the liquidation of investments necessary to produce the equalization payment. In addition, Husband agreed to a bifurcated proceeding that resulted in the Prenuptial Agreement being applicable to this case, regardless of the fact that Wife died during the proceedings. Wife's estate had a valid claim to her property and assets under the Prenuptial Agreement, and Husband presents us with no legal authority for disregarding the terms of the Prenuptial Agreement which required that all joint assets be divided equally.

## CONCLUSION

Based on the foregoing, we conclude that the trial court's Order dividing the marital estate pursuant to the terms of the Prenuptial Agreement was not clearly erroneous except for its failure to divide the parties' backhoe. Therefore, we remand so that the trial court may value and equally divide that joint asset.

Affirmed in part, reversed in part, and remanded with instructions.

May, J. and Altice, J. concur