**Julia KUIPER, f/k/a Julia A. Anderson, Appellant–Respondent,**

v.

**Thomas Warren ANDERSON, Appellee–Petitioner.**

No. 45A03–9306–CV–180.

Court of Appeals of Indiana, Third District.

May 26, 1994.

Rehearing Denied Sept. 29, 1994.

Jerome L. Ezell, Hobart, for appellant.

H. Jonathon Costas, Heidi B. Jark, Hoeppner, Wagner & Evans, Valparaiso, for appellee.

GARRARD, Judge.

When Thomas and Julia Anderson (now Kuiper) had their marriage dissolved on June 27, 1988 the mother was awarded custody of their three children. The oldest child became emancipated and by agreement of the parties the middle child, Kellie, began residing with the father in May, 1992, when she was nearing fifteen. About that time the father petitioned for a custody modification in which he sought custody of both Kellie and the youngest child, Jordan, who was then eight and a half. Hearing was held in January, 1993, and the court awarded custody of both children to the father. The mother appeals the order granting the change of custody of Jordan. The question before us is the proper application of the standard by which a change of custody is to be determined.

IC 31–1–11.5–22(d) provides,

"The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances *so substantial and continuing as to make the existing custody order unreasonable....*"

(Emphasis added.)

▮▮▮▮ That is the standard to be applied when the court is asked to modify a previously entered determination of custody. *Smith v. Dawson* (1982) Ind.App., 431 N.E.2d 850, 852. The policies behind the standard are to

avoid the disruptive effect of moving children back and forth between divorced parents and to dissuade former spouses from using custody proceedings as vehicles for revenge. *Id.* In amplification our supreme court has long recognized that the welfare of the children is paramount and is promoted by affording them permanent residence rather than the insecurity and instability that follow changes in custody. *Wible v. Wible* (1964) 245 Ind. 235, 241, 196 N.E.2d 571, 574; *Adams v. Purtlebaugh* (1951) 230 Ind. 269, 275, 102 N.E.2d 499, 502. In other words it has been our judgment and that of the legislature that children will normally prosper and mature, will learn to accept discipline and to set their own and respect others' boundaries under a standard of consistency better than they will otherwise, even though at any given point in time the noncustodial parent may appear capable of offering "better" surroundings, either emotional or physical. In the larger sense, then, stability in surroundings, schooling, relationships, authority figures, daily routine, economic circumstances, etc. constitute a substantial determinant in assessing the statutorily enumerated factors relevant to a determination of the best interests of the child.

On the other hand, the standard does not mean that in order to grant a change, the trial court must find that the present custodial parent is unfit. The asserted changes in conditions are to be judged in the context of the whole environment. *Lamb v. Wenning* (1992) Ind., 600 N.E.2d 96, 99.

We recognize, of course, that the trial court is invested with sound discretion in making a child custody determination, and our review is limited to whether the court abused its discretion. Thus, in order to reverse we must be persuaded that the decision is clearly against the logic and effect of the circumstances before the court. Phrased somewhat differently, in order to reverse we must believe that the court clearly erred. Considering the standard the trial court was required to apply before entering a change in custody, the court's findings and the evidence in the record before us, we find that the court did err in this case and that the evidence before it was simply insufficient to establish a change in circumstances so substantial and continuing as to make the existing order unreasonable. We therefore reverse and remand with instructions to deny the petition to modify the custody award of Jordan away from his mother.

At the outset we note that the father has a good job at which he earns about $56,000 per year, has apparently remarried successfully (having adopted the daughter of his present wife and having had a child by the marriage) and is interested in and capable of providing for his children. Although the psychological evaluation indicated that he has a tendency to deny problems and to manage anger indirectly, it is not disputed that he is a fit and proper person to have custody even though he is not perfect.

Pursuant to the stipulation of the parties, the court ordered that they and the children submit to a psychological evaluation by Dr. Douglas Caruana, Ph.D., a licensed psychologist, and that his recommendations should be specific as to custody and visitation and should be made part of the record in this case.

Dr. Caruana apparently met with one or more of the parties on nine different dates. At times he met with one or more of the children, at times with the parents, at times with both. His report carefully assessed the strengths and weaknesses of both parents and the children. (Tr. 231–238) His conclusion concerning Jordan stated:

> Jordan should remain in the custody of Julie. Julie has not demonstrated any substantial and persistent change which would cause her to be deemed inappropriate for parenting. Jordan appears comfortable, stable and healthy with the current custody/visitation arrangements. He does profess a desire to change residence, but his reasons for doing so appear to represent a wish to slightly improve his condition as well as spend more time with his father, and do not necessarily reflect a significant psychological need which, if unmet, would at present cause serious difficulties or damage to him.

Despite Dr. Caruana's findings and recommendation the court determined that the pri-

or order was unreasonable and enumerated five reasons to support that conclusion. They were:

a.  Mother has failed to provide adequate supervision for the parties' minor children at all times;

b.  Mother's relationship with Lee has affected the children in a detrimental fashion in that Mother has devoted less time to the children since the inception of that relationship and has in fact embarrassed or angered the children as a result of her conduct with Lee;

c.  Mother has voluntarily agreed that Father should have custody of Kellie;

d.  Father has reestablished a close relationship with Kellie and in his marriage offers a stable, nurturing home for the care of the parties' minor children; and,

e.  The children have each expressed a desire to live with their Father and, just as importantly, have expressed a desire to live together.

The last three findings relate essentially to the agreed-to change of Kellie's custody. The evidence at trial supports these findings, although we note that Dr. Caruana's report assessed Jordan's desire to live with his father as based upon mostly procedural reasons.[1]

Several cases have already determined that the child's preference for custody by a particular parent standing alone is insufficient to constitute a substantial change in circumstances. *See, e.g. Drake v. Washburn* (1991) Ind.App., 567 N.E.2d 1188; *Simons v. Simons* (1991) Ind.App., 566 N.E.2d 551.

■ Indiana decisions have also recognized the propriety of awarding custody of one child to one parent and another to the other upon a consideration of the best interests of the children. *In re Marriage of Larkin* (1984) Ind.App., 462 N.E.2d 1338. See, also, *Anno:* 67 ALR 4th 354. We have found no cases, however, which have examined that question in terms of the requirements for a modification of custody. We believe, however, that the occurrence of a change in the custodial parent of one child should not of itself constitute the change of circumstances necessary to change the custody of other children of the parties. In the present case (and although it was apparently and awkwardly precipitated by Kellie, herself) the parents agreed that her custody should be transferred to the father. We must presume that included in their considerations and agreement to that change, the effect of separating the children was deliberated. We also recognize that a variety of valid considerations may exist to prompt a custodial parent to agree that at a given point in time the other parent should assume custody of a particular child. We believe our society does, and our judicial system should, encourage divorced parents in making such determinations. The chilling effect upon that purpose is obvious if we were to hold that such a voluntary change of custody for one child constitutes the statutory substantial change of circumstances necessary to effect a change of custody of the other children of the marriage. We therefore decline to do so. On the other hand, once the necessary change in circumstances is established, considerations about the desirability of having children in the same or different households are valid.

We turn then to the court's findings that the mother failed to provide adequate supervision for the children at all times and that her relationship with Lee was detrimental to them.

■ There was testimony that fairly frequently, especially in the summertime, Kellie was either at home alone or babysitting for Jordan. The mother readily agreed that this was so and that without unduly interfering with Kellie's schedule, she often had Kellie babysit with Jordan as a matter of economy. This testimony was all quite nonspecific. There was no testimony from which one could deduce that these events occurred for unduly long periods or at inappropriate times. Nor was there any evidence that Jordan was thereby put at risk, or that Kellie

---

1.  "He suggests that [his] mom is A) a bit loose on discipline, B) she can't play baseball with me because she's a girl, and C) she has a boyfriend, but not a husband, which means that I have no step-dad...."

was not adequate as a babysitter. There was evidence that on one New Year's Eve the mother stayed out all night and that Kellie (who had been left at home with her girlfriend and her friends older sister) disobeyed her mother and she and the friend went out to a high school dance and Hardee's restaurant before returning home about 1:00 a.m. Jordan was not present at the home that evening. There was also evidence that during the school year when Jordan got out of school before the mother finished work, he would frequently stay at his father's until she could pick him up.

Turning to the question of the mother's friend, Lee, we first note that there was considerable testimony that he was good to them and with them and that they, as well as the father's adopted daughter, were often included in activities shared by the mother and Lee. There was undisputed evidence that the mother and Lee shared a monogamous and ongoing relationship, and that while they did not live together, they endeavored to spend eight to ten nights a month together. There was no evidence of any family religious beliefs that would make their unmarried relationship especially detrimental to the welfare of the children, and, of course, we have previously held that the fact that they were unmarried does not constitute a substantial change in circumstances. *Dunlap v. Dunlap* (1985) Ind.App., 475 N.E.2d 723. Moreover, the fact that the mother spent time in this adult relationship rather than "devoting herself [exclusively] to her children" is most likely beneficial, rather than detrimental, to their maturing process. *See, e.g. J. Rosemond, Six–Point Plan For Raising Happy Healthy Children* (Andrews & McMeel, 1989), *J. Arbuthnot & D. Gordon, What About the Children: A Guide for Divorced and Divorcing Parents* (The Center for Divorce Education, 3rd Ed., 1993).

There was evidence that on two occasions Kellie felt angered or embarrassed. One night she heard noises coming from the bedroom where the mother and Lee were, and once she was aware that they were taking a bath together. Without exploring the possible reasons behind her reaction, we note that Jordan was apparently absent on both occasions. Indeed, we have found no evidence in the record to support the assertion that he was ever either angered or embarrassed by his mother's conduct with Lee. The trial court's finding concerning Jordan is simply not sustained by the evidence.

In sum, the record before us discloses a single mother less advantaged than the father. She has been coping with child rearing, keeping a job at which she earns about $15,000 per year and trying to establish a life of her own, including an adult monogamous heterosexual relationship. A number of her decisions appear less than ideal, but neither individually nor taken together do they establish any change in circumstances so substantial and continuing as to make the prior custody order unreasonable. When viewed against the unequivocal recommendation of the psychologist that the custody of Jordan should remain with the mother, we are left with the firm conviction that the court erred.

We therefore reverse the modification of custody as to the child, Jordan, and remand with instructions to return his custody to the mother.

HOFFMAN and FRIEDLANDER, JJ., concur.