**In re the Marriage of Reba Ann SPOOR, n/k/a Reba Ann Lyon, Appellant– Petitioner,**

v.

**William SPOOR, Appellee–Respondent.**

No. 45A03–9310–CV–00362.

Court of Appeals of Indiana, Third District.

Oct. 31, 1994.

Nanette K. Raduenz, Efron and Efron, P.C., Hammond, for appellant.

Tula Kavadias, Kavadias & Wyatt, East Chicago, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant Reba Ann Spoor, n/k/a Reba Ann Lyon, appeals the trial court's determination modifying custody of the three children born during her marriage to appellee William Spoor. The facts relevant to the appeal appear below.

An order dissolving the marriage of William and Reba was entered on November 26, 1985. Custody of Billy born November 15, 1979; Patty born February 7, 1982; and Jack born May 2, 1983 was awarded to Reba. William was ordered to pay $125.00 per week in child support and was granted reasonable visitation.

Extensive litigation followed. In February 1987, William filed for a modification regarding medical expenses, the tax exemption, and visitation. The petition was resolved by an agreed order in June 1987.

In February 1988, William filed a petition to modify custody. In September 1988, William filed a petition for temporary custody pending the final hearing. Both petitions were denied. After an appeal by William, the lower court's decision was affirmed in a memorandum decision by this Court on January 30, 1991.

Prior to this Court's memorandum decision, William filed a petition to modify visitation on September 18, 1989, and Reba filed a petition for an increase in child support in November 1989. The parties entered into an agreed order regarding the visitation schedule. The petition for an increase in child support was granted.

In May 1991, William filed a petition to decrease child support. The petition was denied.

In August 1992, William filed the petition to modify custody with which this appeal is concerned. William alleged substantial changes in circumstances such that the care and custody of the parties' minor children should be changed. The specific changes alleged were: 1) that Reba's husband, Michael, abused alcohol and was physically and emotionally abusive to the children on a regular basis; 2) that Reba did not provide safe and appropriate housing for the children; and 3) that Reba and Michael do not provide the children with a loving and nurturing environment and often leave them inadequately supervised. William alleged that his wife, Cindy, was a full-time homemaker and would care for the children. William's petition was accompanied by an affidavit from "Edith Hartnett, Psy.D." upon which he sought emergency temporary custody of the children.

Protracted proceedings ensued. The children, the Lyons, and the Spoors were evaluated by a licensed clinical psychologist, Marguerite P. Rebesco, Ph.D. Dr. Rebesco found strengths and weaknesses in the parenting abilities of all the adults. Her recommendation was that all of the adults work together and through counseling to meet the "exhausting" needs of the children. She concluded that the children would benefit from joint legal custody with physical custody changed to William at the conclusion of the school year.

Over the course of several months, evidentiary hearings were held at which the parties and the children testified. On June 29, 1993, the court entered findings of fact and conclusions of law determining that physical custody should be changed to William, with consultation between William and Reba as to many decisions. The trial court's extensive findings and conclusions rely heavily upon the evaluation by and testimony of Dr. Rebesco. The trial court rejected *in toto* the evaluation by Hartnett.

As distilled, the court found that Reba frequently "abdicated" her parenting responsibilities to her parents and Michael due to her work and school situation; that the children's hygiene often appeared neglected; that the children had academic difficulties in school; that Reba's father had twice made disparaging comments about William which made the children uncomfortable; and that the custodial home was a mere 600–750 square feet, lacking adequate heat in Patty's bedroom and was located in a rural setting without opportunities for socializing with other children. The court also concluded that William demonstrated ability to set limits for the children; that Cindy was a full-time homemaker who could offer care to the children; and that William's home was 2,000 square feet located near parks and other homes offering opportunities for the children to make friends.

■ As restated, Reba presents one issue for review: whether the trial court erred in determining that William proved a change in circumstances so substantial and continuing so as to make the existing custody order unreasonable.

■ Upon an initial custody determination, the trial court presumes that both parents are equally entitled to custody. *Robertson v. Robertson* (1994), Ind.App., 634 N.E.2d 93, 94. However, in a petition to modify custody, the petitioner must demonstrate the existence of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. *Id.;* IND.CODE § 31-1-11.5-22(d) (1993 Ed.). The standard is in place to avoid the disruptive effect of moving children back and forth between divorced parents and to dissuade former spouses from using custody proceedings as vehicles for revenge. *Kuiper v. Anderson* (1994), Ind.App., 634 N.E.2d 556, 557-558. Accordingly, it has long been recognized that the welfare of the children is paramount and is promoted by affording them permanent residence rather than the insecurity and instability that follow changes in custody. *Id.* at 558. This is so even though at any given point in time the noncustodial parent may appear capable of offering "better" surroundings, either emotional or physical. *Id.*

■ The standard, however, does not require a trial court to find that the present custodial parent is unfit prior to granting a change. *Id.* The changes asserted in the petition are to be judged in the context of the whole environment. *Id.* A trial court's inquiry in proceedings to modify a custody decree is strictly limited to consideration of changes in circumstances which have occurred since the last custody decree. *In re Marriage of Simmons* (1985), Ind.App., 487 N.E.2d 450, 453–454. ·

When reviewing a trial court's decision as to modification of custody, this Court· determines whether the record discloses evidence or reasonable inferences to be drawn therefrom which serve as a rational basis to support the findings of the trial court. *Robertson*, 634 N.E.2d at 94. The trial court's determination will be reversed only when the petitioner fails to allege and prove a decisive change in conditions and the trial court does not make findings that there was a change in conditions which warranted a modification of custody, or when the trial court abuses its discretion. *Id.* at 94–95.

As noted above, not only must changes be substantial and continuing so as to render the prior custody decree unreasonable, the changes must have occurred since the prior custody order. In the present custody order, the trial court reported the difficulty in making the determination that a change would be in the best interests of the children. However, also as noted above, our standard for modification restricts a determination of custody based solely upon the best interests of the children by adding substantial and continuing change as the foundation for a decision to alter the *status quo.* It appears here that the circumstances alleged as reasons for a modification consist of isolated deficient acts and allegations that the children could live under "better" circumstances with the Spoors.

The trial court specifically relied upon the findings and testimony of Dr. Rebesco. She determined that Reba had given the children consistent care and that she and Michael had participated in scouting and other extra-curricular activities with the children. Michael was not found to be abusive or to abuse alcohol. Dr. Rebesco found him an "affable, kind-hearted man who truly loves Reba and the children." Although Dr. Rebesco believed that he had attempted to bring more order to Reba's home, she believed he underestimated the severity of the children's problems. She questioned his stability based upon his moves, health, and job status.

Since the last request for modification, Reba's parents and Michael have been the sole alternative caregivers for the children. As evidence of Michael's poor caregiving, William relied upon a single episode during which Michael separated a fight between Billy and Jack by pushing Billy against a wall and holding him there. Michael and Reba reported the incident to Billy's counselor who discussed with Michael alternatives to physical confrontation when disciplining the children.

Dr. Rebesco and the trial court found Reba's reliance upon Michael and her parents to care for the children while she worked as "abdication" of her parenting responsibilities. Further, Dr. Rebesco and the trial court found that she was contemplating further rejection of her parenting responsibilities by planning to begin college course work.

Against this backdrop, the trial court and Dr. Rebesco found that Cindy was a full-time homemaker who cared for the children. The Spoors' home and hygiene requirements were regarded as superior to those at the Lyons' home. Without deeming Reba's supervision style wholly inadequate or without redemption through counseling, Dr. Rebesco and the trial court found William's style superior.

It is noteworthy that between the last custody order affirmed by this Court and the most current petition for modification, William acknowledged lengthy periods of isolation from his children. He made no contact with the children during an 18–month period just prior to this most recent petition. He resumed visitation with the children one month prior to filing the petition for a modification. Visitation was resumed after a counselor for Billy notified William of the children's desire to see him. Because modifica-

tion proceedings are equitable in nature, it follows that a parent should not be able to gain advantage in a quest for custody by ignoring responsibilities until such time as the parent chooses to assert deficiencies by the other parent. *Cf. Pierce v. Pierce* (1993), Ind.App., 620 N.E.2d 726, 731 n. 3 (actions for and incidental to divorce essentially equitable in nature, right cannot arise out of own wrong).

Further, William contends that the children need to be in constant counseling which Reba has addressed only in part. Reba insists that she was without sufficient funds to continue counseling for Billy and that William's persistent attempts to lower support and failure to inform her of medical coverage necessitated the break. William cannot gain a superior position by accusing Reba of a deficiency to which he, in part, contributed.

Reba's work at a beauty salon and plans for school have necessarily placed limitations upon the time she spends with the children, requiring the use of caregivers. However, it is undisputed that William also works and would also rely upon a caregiver, his wife. William's changes to his lifestyle, including a wife who is a full-time homemaker, could be beneficial to the children but do not require a change in custody. Changes in lifestyle including remarriage, full-time employment and achieving stability since the last custody decree do not warrant a change in custody. *See Drake v. Washburn* (1991), Ind.App., 567 N.E.2d 1188, 1190, *trans. den.* Dickson, J., dissenting 579 N.E.2d 31; *Simons v. Simons* (1991), Ind.App., 566 N.E.2d 551, 555–556.

The evidence within the record supports the findings that Michael pushed Billy once and that Reba's father at least twice made disparaging comments about William. A noncustodial parent must show more than isolated acts of misconduct by custodial parent in order to warrant a modification of custody. *Elbert v. Elbert* (1991), Ind.App., 579 N.E.2d 102, 108. Further, evidence in the record demonstrates that William made disparaging comments about Reba in the presence of the children.

While it is true that the possibility exists that the children would benefit from better living conditions, William's higher salary and the stability offered in the Spoors' home, those circumstances cannot form the basis for modification of custody. Accordingly, the decision of the trial court is reversed, and the cause is remanded with instructions to enter an order of custody and visitation which does not violate the terms of this decision.

Reversed and remanded.

GARRARD and CHEZEM, JJ., concur.