In re the PATERNITY OF M.J.M.

**Katherine F. Baxter, Appellant–Petitioner,**

v.

**Mark E. McKinney, Appellee–Respondent.**

No. 67A04–0104–JV–144.

Court of Appeals of Indiana.

April 26, 2002.

John R. McKay, Hickam & Lorenz, Spencer, IN, Attorney for Appellant.

Sidney J. Tongret, Greencastle, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Katherine F. Baxter (Mother), appeals the trial court's grant of Appellant Respondent's, Mark E. McKinney (Father), Petition to Modify Custody.

We affirm.

### ISSUES

Mother raises two issues on appeal, which we restate as follows:

1. Whether the trial court erred in denying her request for a continuance.

2. Whether the trial court abused its discretion in modifying the custody arrangement by awarding physical custody of the parties' minor child, M.J.M., from Mother to Father.

### FACTS AND PROCEDURAL HISTORY

Mother and Father are the biological parents of M.J.M., born February 4, 1998. Father filed a Petition to Establish Paternity on February 16, 1998. On August 4, 1998, the trial court ordered the changing of the birth record of M.J.M. in order to establish Father's paternity and the withholding of Father's income for child support.

On February 8, 2000, Father filed a Petition to Modify Custody of Minor Child and to Have Petitioner Show Cause Why She Should Not be Held in Contempt of Court. On February 21, 2000, the trial court issued an Order to Appear and Show Cause. On February 29, 2000, the service by the Marion County Sheriff of the Order to Appear and Show Cause was unsuccessful. However, on March 9, 2000, Mother's counsel filed an appearance and a Verified Motion to Continue Hearing. On the same day, the trial court granted the motion to continue, and the contempt/status conference was reset for April 6, 2000. On March 24, 2000, Mother filed her Response to Father's Petition to Modify Custody of Minor Child and Request for Attorney Fees.

On April 6, 2000, Mother and Father appeared in court with counsel. Father withdrew his contempt citation regarding visitation issues with assurances from Mother that he would be afforded guideline visitation. The trial court ordered that Father pick up M.J.M. on Fridays for visitation and that Mother pick up M.J.M. on Sundays to return home. Further, the trial court ordered Mother's counsel and Father's counsel to agree upon a custody evaluator. On April 17, 2000, the referral to Ann Newton (Newton) or Beth Newton Watson (Watson) was issued, and a custody hearing was set for August 10, 2000.

Father filed a Motion to Dismiss his Petition to Modify Custody on August 7, 2000 and again on August 23, 2000. On August 24, 2000, Mother filed a praecipe for a hearing on her request for attorney fees. On September 22, 2000, the trial court issued an Order dismissing the Petition to Modify Custody. The trial court also set a hearing date of October 12, 2000 for the issue of attorney fees, which was

reset for November 10, 2000. Subsequently, Father filed a Petition to Reinstate the Petition to Modify Custody on November 2, 2000.

On November 10, 2000, the trial court ordered a custodial evaluation and scheduled a hearing for January 3, 2001. The original order referring either Newton or Watson as the custody evaluator was reinstated. On December 19, 2000, Father filed a Motion for Continuance. The custody hearing was reset for February 21, 2001, and notices were sent to each party's counsel and Watson. On December 27, 2000, the notice sent to Mother's counsel was returned "Addressee Unknown."

On February 19, 2001, Watson filed the custodial evaluation report. Mother received a copy of the report on the day of the hearing. Therefore, at the beginning of the custody hearing on February 21, 2001, Mother requested a continuance in order to address the issues contained in the custodial evaluation. The request was denied on the record, and the hearing continued. On February 26, 2001, the trial court entered its Order (February 26, 2001 Order) granting Father's Petition to Modify Custody after hearing the testimony of the witnesses, examining the evidence, and reviewing the custody evaluation submitted by Watson. The February 26, 2001 Order granted Father sole legal and physical custody of M.J.M.

Mother now appeals. Additional facts will be supplied as necessary.

### DISCUSSION AND DECISION

*I. Denial of Motion for Continuance*

■ Mother argues that the trial court abused its discretion by denying her request for a continuance at the start of the custody hearing. Specifically, Mother contends that the trial court erred by failing to comply with Ind.Code § 31–17–2–12(c).

The decision whether to grant or deny a continuance lies within the sound discretion of the trial court, and its decision will not be reversed on appeal absent clear abuse of that discretion. *Scott v. Crussen,* 741 N.E.2d 743, 746 (Ind.Ct.App.2000). The moving party must be free from fault and show that her rights are likely to be prejudiced by the denial. *Id.* at 746.

I.C. § 31–17–2–12, in pertinent part, provides:

(a) In custody proceedings after evidence is submitted upon the petition, if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child. The investigation and report may be made by any of the following:

\* \* \*

(4) A private agency employed by the court for the purpose.

(b) In preparing a report concerning a child, the investigator may consult any person who may have information about the child and the child's potential custodian arrangements. Upon order of the court, the investigator may refer the child to professional personnel for diagnosis. The investigator may consult with and obtain information from medical, psychiatric, or other expert persons who have served the child in the past without obtaining the consent of the parent or the child's custodian. However, the child's consent must be obtained if the child is of sufficient age and capable of forming rational and independent judgments. If the requirements of subsection (c) are fulfilled, the investigator's report:

(1) may be received in evidence at the hearing; and

(2) may not be excluded on the grounds that the report is hearsay or otherwise incompetent.

(c) the court shall mail the investigator's report to counsel and to any party not represented by counsel at least ten (10) days before the hearing. The investigator shall make the following available to counsel and to any party not represented by counsel:

(1) The investigator's file of underlying data and reports.

(2) Complete texts of diagnostic reports made to the investigator under subsection (b).

(3) The names and addresses of all persons whom the investigator has consulted.

(d) Any party to the proceeding may call the investigator and any person whom the investigator has consulted for cross-examination. A party to the proceeding may not waive the party's right of cross-examination before the hearing.

In the present case, Mother claims that the trial court's denial of her request for a continuance was reversible error because she did not receive the custodial evaluator's report ten (10) days prior to the custody hearing. *See* I.C. § 31–17–2–12(c). Mother received a copy of the report on the day of the custody hearing. Mother maintains that she was unable to review the report, subpoena the custody evaluator, or properly prepare for the custody hearing. Therefore, Mother argues that the trial court erred in denying her request for a continuance.

As stated above, in a custody proceeding "*after* evidence is submitted upon the petition, if a parent or the child's custodian so requests, the trial court may order an investigation and report concerning custodial arrangements for the child." *See* I.C. § 31–17–2–1(a) (emphasis added) (regarding disclosure of *guardian ad litem's file).*

Here, the trial court ordered the custody evaluation report *before* evidence was submitted upon the Petition to Modify Child Custody. Mother fails to direct us to evidence in the record indicating that the investigation was ordered pursuant to I.C. § 31–17–2–12. Therefore, the record discloses that the threshold triggering mechanism to order an investigation and report, that is "*after* evidence is submitted upon the petition," has not been met. *See Deasy–Leas v. Leas,* 693 N.E.2d 90, 94 (Ind.Ct.App.1998), *trans. denied.* (emphasis added). Lacking the triggering circumstances, we find that I.C. § 31–17–2–12 is inapplicable to the present circumstances.

However, we believe that the custody evaluation report is characterized more accurately as "advice of professional personnel" that the trial court may seek at any time pursuant to I.C. § 31–17–2–10. *Kanach v. Rogers,* 742 N.E.2d 987, 990 (Ind. Ct.App.2001). This section provides:

(a) The court may seek the advice of professional personnel even if the professional personnel are not employed on a regular basis by the court. The advice shall be given in writing and made available by the court to counsel upon request.

(b) Counsel may call for cross-examination of any professional personnel consulted by the court.

I.C. § 31–17–2–10. Under this section, the trial court properly sought the advice of professional personnel. The advice was given in writing and was available from the trial court upon request.

Moreover, we recognize that Mother failed to submit her motion for continuance before the start of the custody hearing. The record shows that Mother failed to keep in touch with her own counsel. The evidence also supports Father's contention that Mother knew well in advance about

the custody hearing and the evaluation report. Furthermore, the record shows that the counsel of both Mother and Father agreed upon Watson as the custody evaluator. In fact, there is evidence in the record confirming that Mother met with Watson on December 28, 2000, but that she failed to complete her portion of the evaluation as ordered by the trial court. Watson's report indicates that Mother contacted her throughout the evaluation process, expressed her desire to participate in the investigation, and stated that she was unable to participate due to her lack of funds/economic hardship. However, the evidence offered during the hearing contradicts Mother's claim that she was financially unable to pay for the evaluation. Mother testified that she was gainfully employed as a substitute teacher and that two (2) weeks after the trial court ordered her to participate in the custody evaluation she purchased a house with a mortgage payment of $995.00 a month. Watson's report also stated that Mother called before the custody hearing stating that she was going to attempt to rehire her attorney and file a motion for continuance. Watson stated in her evaluation that she waited "a week or more to hear whether Mother paid her attorney, received a continuance, or whether she could resume her portion of the interview." (Appellee's App. p. 4). The evaluation also stated that Mother called Watson to request a copy of the report before the custody hearing on February 17, 2001.

In the present case, Mother never objected to Watson's report being admitted into evidence. Mother also failed to subpoena Watson to testify at the custody hearing. The evidence clearly supports the contention that Mother had knowledge of the report prior to the custody hearing. Consequently, it is our determination that Mother should have requested that the trial court provide her with a copy of the report in order to prepare for the custody hearing. *See* I.C. 31–17–2–10(a). Additionally, Mother should have subpoenaed Watson to testify at the custody hearing. *See* I.C. § 31–17–2–10(b).

With the above in mind, we conclude the trial court properly denied Mother's request for a continuance. Mother failed to show that she was free from fault and that her rights were prejudiced by the denial. *Scott,* 741 N.E.2d at 746.

## II. Modification of Child Custody Order

■ Mother's next claim is that the trial court abused its discretion by granting sole legal and physical custody of M.J.M. to Father. In particular, Mother maintains that the February 26, 2001 Order failed to specifically set forth the substantial changes in the factors that must be present to support a change in custody. We note, however, that the record does not reflect that either party asked the trial court to enter findings under Ind. Trial Rule 52.

■ In the absence of special findings, the decision of a trial court is reviewed under a general judgment standard and will be affirmed if it can be sustained upon any legal theory consistent with the evidence introduced at trial. *Bedford Recycling, Inc. v. U.S Granules Corp.,* 634 N.E.2d 1361, 1363 (Ind.Ct.App.1994). Furthermore, when a request for specific findings is absent, a custody determination will be reversed only if it is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences to be drawn therefrom. *Prenatt v. Stevens,* 598 N.E.2d 616, 619 (Ind.Ct.App.1992). The trial court's determination will be reversed only when the petitioner fails to allege and prove a decisive change in conditions and the trial court does not make findings that there was a change in conditions which warranted a modification of custody, or when the trial court abuses its discretion. *Spoor v.*

*Spoor,* 641 N.E.2d 1282, 1285 (Ind.Ct.App. 1994). We do not reweigh the evidence or reassess witness credibility, and we consider only the evidence that supports the trial court's decision. *Carmichael v. Siegel,* 754 N.E.2d 619, 634 (Ind.Ct.App.2001).

In the present case, Mother argues that the February 26, 2001 Order failed to specifically set forth the substantial changes in the factors that must be present to support a change in custody pursuant to I.C. § 31–17–2–21 and I.C. § 31–17–2–8.

I.C. § 31–17–2–21, provides, in pertinent part, that the trial court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 of this chapter. Therefore, the trial court must consider the factors listed under I.C. § 31–17–2–8. Among these factors are:

(1) The age and sex of the child;

(2) The wishes of the child's parent or parents;

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling, and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved; and

(7) Evidence of a pattern of domestic violence by either parent.

I.C. § 31–17–2–8.

 As mentioned above, neither party requested that the trial court enter findings. Accordingly, the determination of a modification of custody is committed to the sound discretion of the trial court and will only be reversed upon a showing of an abuse of discretion, which occurs where the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Prenatt,* 598 N.E.2d at 619; *Spoor,* 641 N.E.2d at 1285. The welfare of the child, not the wishes and desires of the parents, is the primary concern of the courts. *Spoor,* 641 N.E.2d at 1284–1285. With respect to physical custody, a noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of child custody; he must show that changed circumstances regarding the custodial parent's stability and the child's well-being are substantial. *Id.* at 1285.

In the instant case, there is sufficient evidence in the record to support the trial court's decision regarding the sole legal and physical custody of M.J.M. The evidence reveals that there were substantial changes in Mother's stability and M.J.M.'s well-being. Here, Mother failed to follow the "straight, forward [sic] orders of the Court" by failing to complete her evaluation. (Tr. p. 75). Mother moved with M.J.M. between four (4) to six (6) times in the last two (2) years, making visitation with Father difficult and irregular. Further, the evidence discloses that Mother is a licensed foster care provider in Putnam and Monroe Counties. At the time of the custody hearing, Mother had recently become a foster care provider for two (2) foster children for a total of three (3) foster children. This evidence raised concerns that Mother was only a foster care provider because it generated income to her. It also proves that M.J.M.'s environment changed substantially. Additionally,

the record reflects that Mother experienced difficulties in her personal relationships that seem to have affected her ability to care for M.J.M. It appears that Mother placed her own needs before the needs of M.J.M. and Mother's personal issues, coupled with the additional foster children in her home, substantially changed the circumstances triggering a modification of custody. *See Spoor,* 641 N.E.2d at 1285.

On the other hand, the record indicates that Father is married, has worked the same job for twelve (12) years, and has a stable home for M.J.M. Father testified that he believes that he can provide a more stable environment for M.J.M., especially since his wife will be able to care for M.J.M. full-time. The evidence on the record also establishes that Father followed the trial court's order and participated in the evaluation, paid his child support regularly, and bonded with his child even though their visitation was irregular due to Mother's frequent moves.

Before taking this matter under advisement, the trial court noted the difficulty in making the determination that a change would be in the best interest of M.J.M. However, our standard for modification restricts a determination of custody based solely upon the best interests of a child by adding substantial and continuing changes as the foundation for a decision to alter the status quo. *Spoor,* 641 N.E.2d at 1285.

In reaching a decision, the trial court stated in its February 26, 2001 Order that it relied upon the witnesses' testimony, the evidence presented at the custody hearing, and the findings of Watson, who conducted the custodial evaluation. It was Watson's recommendation that the child's best interest would be served by a modification of custody with sole legal custody and physical custody in Father. Watson expressed great concern about Mother's emotional stability due to her history of mental health problems, the difficulties she was

having in her relationships, her reliance on foster care as income, her tendency and frequency to move and its effects on M.J.M., her lack of follow-through on her obligations, her ability to put M.J.M.'s needs above her own, and her lack of attention to the child's developmental issues.

■ Continuity and stability in the life of a child is an important component in determining the proper custodial arrangement for a child. *See Dwyer v. Wynkoop,* 684 N.E.2d 245, 248–49 (Ind.Ct.App.1997), *trans. denied.* In the February 26, 2001 Order, the trial court determined that it was in the best interests of M.J.M. to grant Father sole legal and physical custody. (*i.e.,* Father would provide continuity and stability in M.J.M.'s life).

With the above in mind, it is our determination that the evidence supports the trial court's modification of the custody agreement. *Carmichael,* 754 N.E.2d at 635. In reviewing a general judgment, we cannot reweigh the evidence, and we consider only the evidence that supports the trial court's judgment. *Bedford Recycling, Inc.,* 634 N.E.2d at 1363. Therefore, we find no abuse of discretion. *Id.* Thus, the trial court properly granted Father's Petition to Modify Custody.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in denying the motion for a continuance. Additionally, we conclude that the trial court did not abuse its discretion by granting Father's Petition to Modify Custody.

Affirmed.

BROOK, C.J., and MATHIAS, J., concur.