**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**HEIDI K. KOENEMAN**
Murphy Ice & Koeneman, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**ADAM L. HAND**
**ANDREA M. TREVINO**
Beckman Lawson, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF J.K., | ) | |
| | ) | |
| A.K., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1301-JP-12 |
| | ) | |
| T.L., | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Thomas Ryan, Senior Judge
Cause No. 02D07-0005-JP-134

**October 7, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

A.K. ("Father") appeals the denial of his petition to modify custody of his daughter, J.K. We affirm.

**Issue**

Father raises two issues, which we combine and restate as whether there is sufficient evidence to support the trial court's denial of Father's petition to modify custody.

**Facts**

J.K. was born to T.L. ("Mother") in 1998, and Father established his paternity in 2000. In 2002, the parties reached a court-approved agreement regarding custody of J.K., providing that Mother and Father would have joint legal custody and Mother would have primary physical custody.

The parties have had some conflicts and disagreements over the years regarding J.K.'s education, religious upbringing, and the manner in which Mother is raising J.K. For example, during the 2007-08 school year, J.K. was tardy to school on seventy-four days. Mother attributed these tardies to J.K. having mononucleosis and to troubles with a neighborhood bully.

In the fall of 2009, Mother unilaterally moved J.K. from the public school system of Southwest Allen County where she had always attended school to a Montessori school. Father filed a petition for contempt against Mother. In December 2009, a court-appointed guardian ad litem ("GAL") recommended that J.K. switch back to the public

2

elementary school at the semester break; the trial court also found Mother in contempt for unilaterally switching J.K.'s school.

In August 2010, Mother moved in with her mother in DeKalb County. Mother did not attempt to enroll J.K. in a DeKalb County school; however, she informed Father that he and his current wife would be required to provide transportation for J.K. to school in Allen County. On August 17, 2010, Father filed another petition to hold Mother in contempt. On that same date, the trial court ordered Mother to provide all transportation for J.K. to school in Allen County but did not hold her in contempt at that time.

Mother's living and employment arrangements were unstable between 2008 and 2011. She apparently moved seven to eight times during that period, with at least two moves resulting from eviction, and including living in a hotel at one point and living out of her car for a brief period. She also had several jobs from which she had been terminated for various reasons. Despite instability in Mother's living and employment arrangements, it is undisputed that J.K. is a well-adjusted, bright child who is a straight-A student and participant in multiple extracurricular activities. There also is no evidence that J.K. has ever suffered from malnutrition, or untreated health, psychological, or emotional problems.[1]

Father's lifestyle before 2007 also involved multiple living and employment arrangements. In 2007, his life began to stabilize when he moved into a three-bedroom

---

[1] On one occasion, Mother did not want J.K. to get a non-mandatory seasonal flu vaccination, contrary to Father's wishes. J.K. did not get the flu that year. On another occasion, Mother cancelled a dental appointment made by Father because the dentist he had chosen was not within the network of Mother's dental insurance provider.

3

home in the Southwest Allen County school district, where he has lived ever since. In 2008, he married his current wife, with whom he has a young child. Father also has a third child from another relationship who sometimes stays with Father. Father currently is a firefighter.

On July 12, 2010, Father filed a petition requesting modification of physical custody; the petition was silent on the issue of legal custody. Due to an unsuccessful mediation attempt, continuances, and recusal of the presiding magistrate, a first hearing on the petition to modify custody was not held until July 7, 2011. During the hearing, Father stated that not only was he seeking a modification of physical custody, but of legal custody as well. The hearing was not completed on that date. On July 13, 2011, Mother filed a petition to hold Father in contempt related to J.K.'s religious upbringing, a summer camp Mother objected to, and an instance of Dad taking J.K. to the doctor without prior notice to Mother.

The trial court concluded the custody hearing on October 17, 2011. The GAL who had previously been appointed in the 2009 school dispute testified that in her belief, it would be in J.K.'s best interests for Father to have custody of her. However, in preparation for the custody hearing, the GAL had spoken primarily with Father, Father's wife, and J.K., and very little with Mother, apparently due to scheduling difficulties. Also, although the GAL had some concerns about Mother's emotions, she did not believe Mother was mentally unstable and that, although J.K. had fears of upsetting Mother if she went to live with Father, she was not afraid of Mother actually harming her.

4

On November 8, 2011, the trial court entered an order without findings denying Father's petition to modify custody.[2] It also found Mother in contempt as alleged in Father's August 17, 2010 contempt petition, and Father in contempt as alleged in Mother's July 13, 2011 contempt petition. However, the trial court entered no contempt sanctions at that time and scheduled a hearing regarding such sanctions for April 26, 2012. Father, meanwhile, initiated an appeal from the November 8, 2011 order. The case proceeded to be fully briefed, and the April 26, 2012 hearing was delayed pending outcome of the appeal. On July 25, 2012, this court issued an opinion dismissing the appeal because the November 8, 2011 order was not a final judgment and it did not fall within any of the categories for an interlocutory appeal as of right under Indiana Appellate Rule 14(A). A.K. v. T.L., No. 02A04-1112-JP-653 (July 25, 2012).

After our opinion was certified, on November 21, 2012, the trial court held a hearing regarding contempt sanctions and concluded, upon representation by both parties that they were communicating better regarding J.K. and would continue to do so, that it would not impose any sanctions against either party. As part of its order declining to impose any sanctions, the trial court stated "that considering the depth and breadth of the disagreements between [J.K.]'s parents, joint legal custody may not be appropriate; however, no party has requested the Court to modify same." Appellant's App. p. 32. Father now again appeals the denial of his petition to modify custody.

**Analysis**

---

[2] Neither party had requested written findings and conclusions prior to this order.

5

We review a trial court's ruling regarding a request for modification of custody for an abuse of discretion. In re Paternity of J.T., 988 N.E.2d 398, 399 (Ind. Ct. App. 2013). We give considerable deference to trial courts in family law matters, recognizing that they often must make "'Solomon-like decisions in complex and sensitive matters'" and that only trial courts are in a position "to see the parties, observe their conduct and demeanor, and hear their testimony . . . ." Trost-Steffen v. Steffen, 772 N.E.2d 500, 509 (Ind. Ct. App. 2002) (quoting Speaker v. Speaker, 759 N.E.2d 1174, 1179 (Ind. Ct. App. 2001)), trans. denied.[3] In reviewing a custody modification ruling, we must not reweigh the evidence or assess witness credibility and will only consider the evidence and inferences most favorable to the trial court's judgment. J.T., 988 N.E.2d at 400.

Additionally, Father had the burden of proving that a modification of custody was warranted; therefore, in appealing the denial of his motion he is appealing from a negative judgment. See Nunn v. Nunn, 791 N.E.2d 779, 783 (Ind. Ct. App. 2003). We will reverse a negative judgment only if it is contrary to law, meaning that the evidence points unerringly to a conclusion different from that reached by the trial court. Id. We are obligated not to substitute our judgment for that of the trial court if any evidence or legitimate inferences support the trial court's ruling. Best v. Best, 941 N.E.2d 499, 503 (Ind. 2011). In order to reverse a trial court's custody modification ruling, "'it is not enough that the evidence might support some other conclusion, but it must positively

---

[3] We note that the statutes and case law governing child custody in paternity cases are substantially similar to the statutes and case law governing child custody in marital dissolution cases and, therefore, we may rely upon marital dissolution cases here. See In re Paternity of K.J.L., 725 N.E.2d 155, 157 (Ind. Ct. App. 2000).

require the conclusion contended for by the appellant before there is a basis for reversal.'" Id. (quoting Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002)). "[I]t is particularly difficult for a reviewing court to second-guess a situation that centers on the personalities of two parents battling for control of a child." Kirk, 770 N.E.2d at 308.

In paternity cases, an existing child custody order may not be modified unless "(1) modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter." Ind. Code § 31-14-13-6. The relevant factors listed in section 2 are:

(1)     The age and sex of the child.

(2)     The wishes of the child's parents.

(3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)     The interaction and interrelationship of the child with:

(A) the child's parents;

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interest.

(5)     The child's adjustment to home, school, and community.

(6)     The mental and physical health of all individuals involved.

7

(7)     Evidence of a pattern of domestic or family violence by either parent.

(8)     Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

I.C. § 31-14-3-2.

We emphasize that a showing of a change in circumstances regarding one or more of the above factors is not enough to warrant a modification of custody; it must also be proven that modification is in the child's best interests. Joe v. Lebow, 670 N.E.2d 9, 22-23 (Ind. Ct. App. 1996). "The welfare of the child, not the wishes and desires of the parents, is the primary concern of the courts." In re Paternity of M.J.M., 766 N.E.2d 1203, 1209 (Ind. Ct. App. 2002). With respect to physical custody, to justify modification of custody, a noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of child custody; he or she must show that changed circumstances regarding the custodial parent's stability and the child's well-being are substantial. Id.

Before turning to the particulars of this case, we observe that Father relies upon a number of cases that, arguably, have some parallel facts to the present case. However, those cases were ones in which custody of child was in fact modified by a trial court and, on review, we or our supreme court affirmed such modification in accordance with the standard of review and great deference to trial courts in family law matters. See, e.g., In re Marriage of Richardson, 622 N.E.2d 178 (Ind. 1993); Julie C. v. Andrew C., 924

8

N.E.2d 1249 (Ind. Ct. App. 2010); Haley v. Haley, 771 N.E.2d 743 (Ind. Ct. App. 2002); Joe, 670 N.E.2d at 26; Barnett v. Barnett, 447 N.E.2d 1172 (Ind. Ct. App. 1983). Here, by contrast, we are reviewing a denial of modification and must give great deference to that decision. In fact, because Father is appealing from a negative judgment, we give even more deference to that decision than if custody had been modified. That the evidence in this case possibly could have supported a modification of custody does not mean that modification had to be ordered. Thus, cases in which we or our supreme court affirmed a modification of custody are of limited value in assessing whether we should reverse a modification denial.

In many respects, Father's description of the facts often presents the evidence presented by him and ignores Mother's evidence and testimony. For example, Father generally attempts to paint Mother as emotionally unstable and potentially violent, prone to making disparaging remarks about Father and his family or encouraging J.K. to lie to Father, and suggests that his current wife is very supportive of Mother's relationship with J.K. Mother, on the other hand, testified that Father's examples of her purported emotional instability were exaggerated,[4] that she did not encourage J.K. to lie, and that Father's current wife was difficult to get along with. Mother asserted before the trial court that Father's wife was not supportive of the relationship between Mother and J.K.

---

[4] At the modification hearing Father submitted a several-page exhibit of purported examples in which Mother engaged in uncooperative, disruptive, or inappropriate behavior. Mother, who represented herself before the trial court, directly contradicted some of these examples in her testimony; when she indicated to the trial court that she was going to contradict other examples, the trial court encouraged her not to do so in the interests of time and she moved along in her testimony.

and was a cause of many of the disagreements regarding J.K. There also is no professional or expert evidence in the record to support any suggestion that Mother suffers from psychological problems that could harm J.K. In fact, although the GAL expressed some concern over Mother's tendency to become very emotional in matters regarding J.K., she did not have concern for Mother's mental stability. There also is no evidence that Mother has ever physically abused J.K. in any way.

What does appear to be undisputed, however, is that Mother in the several years before the modification hearing had been experiencing considerable instability in her housing and employment situations, while Father during the same time period had stabilized his own life, was gainfully employed, and had been living in a child-appropriate home for several years with his current wife and one child, with occasional visitation by another child. Changes in a noncustodial parent's lifestyle including remarriage, full-time employment, and achieving stability since the last custody decree does not mandate a change in custody. Spoor v. Spoor, 641 N.E.2d 1282, 1286 (Ind. Ct. App. 1994). Likewise, the fact that a noncustodial parent may appear capable at the time of a modification hearing to provide "better" surroundings for a child, either emotional or physical, is not necessarily enough to require a modification of custody. Id. at 1284.

As for Mother, she did present evidence at the modification hearing that she was currently leasing an adequate home in the Southwest Allen County school district, near one of J.K.'s best friends and not very far from both Father and Father's parents. She also was employed by Meijer at the time. Most importantly, however, the evidence in

this case is overwhelming and undisputed that J.K. is currently healthy, a straight-A student, heavily involved in extracurricular activities, as well as volunteering with non-profits thanks to Mother's encouragement. It certainly is unfortunate, and less than ideal, that J.K. has had to experience with Mother the unstable housing and employment situations. But, even so, the evidence most favorable to the trial court's ruling indicates that Mother as J.K.'s primary physical custodian has raised and is raising a well-adjusted child despite those difficulties. This alone would be sufficient justification for doubting that modifying custody of J.K. would be in her best interests.

Father also asserts that J.K. has expressed her desire to live with him and his current wife and her half-sibling.[5] Even if J.K. did in fact tell Father that she wanted to come live with him, there was no in camera interview of J.K. by the trial court. Especially without hearing directly from J.K. in a neutral setting, it was for the trial court to weigh the value of Father's testimony regarding J.K.'s wishes. In any event, a change in the child's wishes is only one factor to consider when ruling upon a custody modification request.

Father also contends Mother has a habit of making unilateral decisions regarding matters such as J.K.'s education, contrary to the joint legal custody arrangement. The clearest example of this was Mother's enrollment of J.K. in a Montessori school at the beginning of the 2009 school year without Father's knowledge. During the custody hearing, however, the trial court expressed that it did not want to delve into that matter

---

[5] Contrary to Father's assertion, the GAL did not clearly state that J.K. had expressed to her the desire to live with Father.

because it had already been resolved by the earlier holding of Mother in contempt for taking that action. Mother's move to DeKalb County before the beginning of the 2010 school year, which caused transportation issues for J.K. that required court intervention, is another example. However, aside from these incidents, there is scant evidence that Mother has, for example, frequently interfered with Father's visitation rights. Again, isolated acts of misconduct by a custodial parent do not mandate a custody modification. M.J.M., 766 N.E.2d at 1209. A custodial parent's lack of cooperation with a noncustodial parent likewise is not necessarily sufficient to mandate a modification of custody. Haley, 771 N.E.2d at 748.

Not surprisingly, Father places much emphasis on the GAL's testimony that, in her opinion, it would be in J.K.'s best interest to be placed in Father's custody. That testimony, however, was merely one item of evidence for the trial court to consider in reviewing all of the pertinent factors for modifying custody. A trial court is not required to accept opinions of experts regarding custody. Clark v. Madden, 725 N.E.2d 100, 109 (Ind. Ct. App. 2000). Furthermore, Mother asserted at the custody hearing that the GAL had spent much more time talking to Father and Father's wife regarding the custody situation than to her. This would provide a reasonable basis for the trial court to provide less weight to the GAL's testimony as it could have been based upon a one-sided version of events as presented by Father.

Finally, Father argues that it was inconsistent for the trial court to note the "depth and breadth of the disagreement between [Mother and Father]" and suggest that a change

of legal custody could be appropriate, but also deny Father's motion to modify custody; in fact, the trial court also failed to acknowledge that Father had requested an award of legal custody during the custody modification hearing.[6]  Appellant's App. p. 32. However, the trial court's noting of the disagreements between Mother and Father does not necessarily indicate that Mother was primarily to blame for them.  Indeed, the trial court also found Father in contempt for violations of the joint legal custody arrangement and Father does not challenge that finding.  Thus, there was some misconduct by both sides in this case, and it was within the trial court's broad discretion to decide the effect that such misconduct should have on the parties' custodial arrangement.  See Carmichael v. Siegel, 754 N.E.2d 619, 635-36 (Ind. Ct. App. 2001).  Furthermore, the trial court found, in addition to noting the "breadth and depth" of the parties' previous disagreements, that they currently were doing better communicating regarding J.K. and it did not impose any contempt sanctions against either party for that reason.  In light of that unchallenged finding and the evidence of previous uncooperativeness by both parties, there was no inconsistency between the trial court's finding of disagreements between the parties and its decision to maintain the status quo regarding J.K.'s custody.

**Conclusion**

---

[6] Father did not request a change in legal custody in his paper filings, but he did request such a change orally at the modification hearing.  Clearly, when the trial court issued its November 21, 2012, order in this case stating that neither party had requested a change in legal custody, it was referring to the parties' paper filings and evidently had not recalled Father's oral request for such a change.  Regardless, upon the trial court's denial of Father's petition to modify physical custody, it would have likely been impracticable to award Father sole legal custody of J.K. while she continued to reside primarily with Mother.

13

Ultimately, even if the evidence in the case could have supported a modification of custody, this simply is not a situation in which it was an abuse of discretion not to modify custody. Reversals in situations such as this are necessarily few and far between, given our standard of review and the lack of bright-line standards regarding what is in the best interests of one particular child. We affirm the denial of Father's petition to modify custody.

Affirmed.

CRONE, J., and PYLE, J., concur.